Hon. JOHN R. McBRIDE, Chief Justice.
Hon. MILTON KELLY, } Justices.
Hon. JOHN CUMMINS, } Justices.

### T. J. MOORE *v.* HENRY KOUBLY.

Clerk's Certificate.—The certificate of the clerk of the district court that the "judgment has been duly appealed" will not cure any defects in the record. It is for the court to determine that question from the record.

Appearance—Waiver.—A party appearing generally, in a suit or proceeding, thereby cures whatever defects may exist in the original process to bring him into court.

Idem.—A voluntary appearance in an action is as effectual for any purpose as due service of process.

Idem—Notice of Appeal.—A party appearing generally in a case on appeal in this court, thereby waives all informalities in the notice of such appeal, or want of service of the same.

Jurisdiction—Probate Courts.—The act of the legislature conferring appellate jurisdiction upon the probate courts in civil cases, is in conflict with the organic act.

Appeal from the first district, Nez Perce county.

*A. Heed,* for the appellant.

Appellant seeks to have the court review all intermediate orders and judgments, and to have the order and judgment

of the district court reversed, and to have the judgment of the justice of the peace affirmed with costs. (Stats., p. 141, secs. 292 and 293.)

*Curtis & George,* for the respondent.

There is no evidence of the service upon respondent of any notice whatever of this appeal. The record shows no judgment or order of the court below in the case. The appeal from the probate court to the district court was without authority of law, and conferred no jurisdiction upon that court in the case, either original or appellate. And the district court very properly decided nothing. . The most that court could have done was to have dismissed the appeal.

This court can not go behind the district court to review any order or judgment made by any inferior court. This court can only act upon the proceedings, judgment, or orders of the district court from which the appeal was brought here, whether the same be intermediate or not. Nor can this court affirm the judgment of the justice of the peace, as no appeal lies from that court to this. And no remittitur or mandate could be sent there. If the inferior court erred, the district court was open to correct them; and this court to correct the errors of the district court. In this case the district court committed no error by having done nothing.

All the proceedings in all the courts below have been and are *coram non judice* and void, and this appeal is the same. The justice had no jurisdiction over the subject-matter; the probate court, under the organic act, had no appellate civil jurisdiction; the district court had no jurisdiction on appeal from a justice's court through a probate court; this court has no jurisdiction whatever to determine any of the rights of the parties, because no such rights were submitted for the determination of the district court, and it determined none—not even awarding costs.

CUMMINS, J., delivered the opinion of the court, McBRIDE, C. J., and KELLY, J., concurring.

This was an action in replevin, originally commenced and tried in the justice's court for the recovery of specific per-

sonal property, or its value, which was determined in favor
of the plaintiff.　From that court the defendant appealed
to the probate court of Nez Perce county.　When the cause
was called up for hearing in the probate court, on the fifth
of February, 1864, plaintiff, by his counsel, moved the court
to dismiss the cause, upon the ground that the probate
court did not possess, nor could it exercise, appellate juris-
diction.　This motion was allowed by the court, and the
cause accordingly dismissed. From this judgment, or order
of dismissal, the defendant appealed to the district court of
the first judicial district.　On the first day of April, 1864,
the cause being called up for hearing in the district court,
that court reversed the judgment of the probate court in
sustaining the motion, holding that the probate court was
properly invested with and could exercise appellate jurisdic-
tion, and hence erred in dismissing the cause.　But whether
the case was remanded to the probate court, as would have
been proper under this ruling, for further or for any pro-
ceedings, does not clearly appear from the record before us.

From the judgment of the district court disallowing the
motion filed in the probate court, and declaring that that
court could legally exercise appellate jurisdiction, the plaint-
iff appeals to this court.　Upon this state of facts, the re-
spondent files a motion to dismiss the appeal upon the
grounds:

1. That there is no evidence in the record or transcript
from the court below of service of the notice of appeal on
the respondent.

2. There is no judgment of the court below (meaning the
justice's court) from which an appeal will lie.

As to the first point raised by this motion, it is true the
record does not show or contain those facts necessary to con-
stitute legal service of a notice.　A certified copy of the
notice of appeal is set out in the transcript, together with a
certificate of the clerk that the appeal was "duly taken to
the supreme court by the filing and service of the proper
notice," etc.　The rule is well understood that it is for the
court and not for the clerk to determine whether an appeal
has been properly taken.　It is the duty only of the clerk to

certify to the facts as they exist, in relation to the notice and its service; and it is the province of the court to determine whether these facts constituted legal service—such service as will give this court jurisdiction of the respondent. If they do not, the certificate of the clerk that a "judgment has been duly appealed," will not obviate the defect in the record.

Though it does not affirmatively appear on the papers in this court that due service of the notice of appeal was had upon the respondent, yet we do not deem the objection here well taken. The object to be attained by a notice of appeal and service of the same, is to notify the respondent that an appeal has been taken, and of the court in which he is to appear to oppose the reversal or modification of the judgment or order by which the appellant alleges he has been aggrieved.

It is a well-established rule of law, upon principle as well as authority, that if a party appear in a suit or proceeding, he thereby cures or waives whatever defects may exist in the original process itself necessary to bring a party into court, or whatever irregularity may have occurred in the service of such process. A voluntary appearance in a suit is as effectual for any purpose as due service of process. The supreme court of the United States, in the case of *The United States* v. *Curry et al.*, say that "the appearance of the defendant in error, by attorney, in the appellate court, superseded the necessity of a citation; and after such appearance no advantage can be taken of the want of a citation, even though the attorney, for special reasons, should be allowed to withdraw his name." (See *United States* v. *Curry et al.*, 6 How. 106.) It is proper here to remark that the citation there referred to is nothing more than a formal notice to the defendant in error, and answers to our notice of appeal. In the case before us, the respondent, by his attorney, has appeared and filed a motion, as before stated, not only raising the question of the legal sufficiency of the service of the notice of appeal, so far as the facts contained in the record are concerned, but also raising the question of the legal sufficiency of the judgment in the

justice's court, as shown by the transcript, to sustain an appeal for any purpose. From this it can not be seriously contended that the respondent has not appeared generally to the case. This being true, the object and purpose of the notice of appeal has been as fully and effectually accomplished as if the service of the same had been made upon the respondent.

A respondent ought not to be permitted to come into an appellate court and raise objections going to the substantial merits of the case, on a motion to dismiss the appeal, and at the same time contend that he is not in court; that the court has not jurisdiction of the matter in controversy, by reason of a want of due service of the process or notice necessary to bring the respondent there. A party, therefore, appearing generally in a case on appeal in this court, thereby waives all informalities in the notice of such appeal, or want of service of the same.

It will be unnecessary to pass upon the second objection raised by respondent's motion, as it will be proper first to examine into and pass upon the question of the appellate jurisdiction of the probate court involved in the record, which the court below determined in the affirmative on a motion from that court. The determination of this question will dispose of the case in this court.

This cause was instituted in the justice's court on the seventh day of November, 1863, and by agreement of parties entered of record and heard on the same day. The defendant filed his notice of appeal on the same day, and procured service of the same upon the plaintiff on the ninth, as appears from the sheriff's return on the same. The appeal, as the record shows, was taken to the probate court before the convening of the first session of the legislative assembly—hence, prior to the enactment of a code of procedure, civil or criminal, for the territory. It is, therefore, presumed that the parties were governed by the statutes of Washington territory, in force in Nez Perce and other counties segregated from that territory by the act of congress of March 3, 1863. From an examination of these statutes, it will be found that they did authorize an appeal to the pro-

bate court from the justice of the peace. The question then
arises, Was it competent for the legislature to invest these
courts with appellate jurisdiction? The ninth section of
the act of congress of March 2, 1853, conferring judicial
power upon the territory of Washington, contains precisely
the same language found in the corresponding section of
the act of March 3, 1863, conferring judicial power upon
this territory. It is there declared that the "judicial power
of said territory shall be vested in a supreme court, district
courts, probate courts, and justices of the peace." And,
further, that "the jurisdiction herein provided for, both
appellate and original, and that of the probate courts and
justices of the peace, shall be as limited by law." Suffi-
cient is here quoted from that act to indicate generally the
distribution of the judicial power among the several courts
created thereby, and the character and extent of the juris-
diction with which those inferior courts are invested, as
well as the authority under which the legislature attempted
to clothe the probate courts with appellate jurisdiction. In
other words, a complete judiciary system was by that act
established, with the general nature and extent of the juris-
diction conferred upon each branch thereof, either declared
by the express terms of the act itself or by the terms by
which those courts are designated. To illustrate our mean-
ing more fully: Justices of the peace are public officers, well
known to our jurisprudence, invested with judicial powers
for the purposes of preventing breaches of the peace, and
bringing to punishment those who have violated the law,
and in many of the states and territories are possessed of
limited jurisdiction in civil matters. The district courts are
tribunals of general jurisdiction, both common law and
chancery, and the supreme court possesses almost exclusively
appellate power. These terms import too clearly the nature
and powers of these courts to afford ground for any doubt
as to their jurisdiction. And yet the only express limita-
tion of the jurisdiction of the court of justice of the peace
contained in the organic act, unless it be found in the name
of the court itself, is as to civil business, where "the title

or boundaries of land may be in dispute, or where the debt
or sum claimed shall exceed one hundred dollars."

The probate courts established by that act are also tribu-
nals of limited jurisdiction. They exist in some form or
other in every state and territory composing our govern-
ment, and the general nature and powers of the same are as
well understood and as clearly defined as are those of other
courts above enumerated. The very names or terms by
which these courts are designated have a clearly defined
and well-known signification or meaning in our jurispru-
dence. The mere mention of the title of the court conveys
to our minds clear preceptions of its power and jurisdiction.
The probate courts, it is well understood, *ex vi termini*,
have been established for the proof of wills, for the gen-
eral management and final settlement of decedents' estates,
for the general supervision of guardians and their wards,
and all other matters legitimately pertaining to this class of
business. The nature and scope of authority, here indi-
cated as possessed by the probate court, are as well under-
stood by the term designating that court as are either of the
other courts known to our judiciary system. And yet no
one would contend for a moment that because the legisla-
ture are not inhibited by express terms, therefore they
may confer, for instance, chancery powers upon justices'
courts. Still the only plausible argument which is or can
be urged to sustain the proposition that the legislature may
confer upon or invest the probate courts with civil or appel-
late jurisdiction, is founded upon the absence of any express
prohibition, in the organic act establishing these courts,
against the granting of such power.

The conclusion from the foregoing is, then, but reason-
able and proper, that when congress used the terms by
which they designated the several courts they established in
these territories, and in distributing the power among
them, they intended to and did use those terms by which
these courts are denominated with reference to their well-
known and uniformly accepted definition, and that they in-
tended to confer upon and invest these courts respectively
with such jurisdiction and power only as legitimately and

properly belongs to them, and as indicated by their several titles. If, then, congress, when they used the term "probate court," intended thereby to establish a court for the proof of wills, etc., and certainly this is the only reasonable and legitimate inference to be drawn from the language of the act itself, then the words "as limited by law" occurring in the organic act, were evidently intended to restrict those courts of inferior jurisdiction to the exercise of that power or authority only which their titles import. Hence, the act of the legislature, giving appellate jurisdiction to these probate courts, was in contravention of the provisions of the act of congress, from which all legislative as well as judicial power is derived; and, therefore, the judgment of the court below, reversing the judgment or order of the probate court dismissing the appeal for want of jurisdiction, was erroneous.

The judgment of the district court is reversed, and the cause is remanded, with instructions that the appeal in that court be dismissed.