642         WEBSTER v. SEATTLE TRUST CO.

[No. 881.   Decided June 3, 1893.]

MARY E. WEBSTER, *Respondent*, v. SEATTLE TRUST COM-
PANY *et al.*, *Appellants.*

WILLS—CHILDREN UNPROVIDED FOR—DISTRIBUTION OF ESTATE
BY STATUTE—CONSTRUCTION OF WILL BY PROBATE COURT—
ESTOPPEL.

Where the judgment of a probate court that a decedent died in-
testate as to his children for the reason that they were not named or
provided for in his will, as required by § 1325, Code 1881, and its or-
der of distribution of such decedent's estate accordingly, have re-
mained undisturbed and unappealed from for a period of ten years,
other courts are estopped to construe the will upon that point.

Although a will may, under the provisions of § 1325, Code 1881, be
inoperative as to the testator's children, and they entitled to share
in the testator's estate as if he had died intestate, yet the will is
valid for all other purposes; and a devise of all the testator's estate
to his wife during her lifetime, with remainder to his heirs, will
operate, where there are two children, to give the widow but a life
estate in one third of the testator's separate property.

The power given probate courts by the legislature of Washing-
ton Territory to make distribution of a testator's estate to his minor
children when they were not provided for in his will, was not in
contravention of the organic act (10 U. S. St. at Large, 172) creating
such courts.

*Appeal from Superior Court, King County.*

*Greene & Turner, A. W. Hastie,* and *James B. Howe,* for
appellants.

*Preston, Carr & Preston,* and *W. R. Bell,* for respondent.

The opinion of the court was delivered by

STILES, J.— Henry A. Webster died in 1883, leaving a
will made in 1876.   At the date of the will he was a mar-
ried man, and had one child, a minor, who died before his
father.   Two other children were born after the date of
the will, and survived their father, and they and the widow

were the heirs at law of the decedent's estate. The will contained but one disposing clause, aside from a direction for the payment of debts, which was as follows:

"I give, bequeath and devise all my estate, real and personal, of which I may die seized and possessed, to my wife, Mary Elizabeth Webster, now living at Port Townsend, Washington Territory, during her lifetime; what remains of the same at her death shall revert to my heirs at law."

Probate of the will was had in 1883, in Jefferson county; and thereafter, in the year 1884, upon petition of the widow and executrix, the probate court ordered a distribution of the estate, in accordance with the statutes of descent, viz., one-half of the community property and one-third of the separate property to the widow, and one-fourth of the community and one-third of the separate property to each of the children. In arriving at this result the court found that, "whereas the failure to mention the minor heirs in said will, they having been born after said will, (Henry A. Webster) did in accordance with § 1325 of Code of 1881, die intestate."

This case arises upon an action brought by the widow in 1892, to compel specific performance of a contract made by her with the appellant, the Seattle Trust Company, for the sale of lot 4, section 27, township 25 north, range 4 east, in King county, wherein she covenanted for the conveyance of an unincumbered fee simple title. This tract was included in the inventory of property administered upon in Jefferson county, and was there found to be the separate property of the deceased. In the record of the case there is an exemplified copy of the record in the probate court of Jefferson county, including certain orders which we have not yet mentioned, but which are not to be lost sight of. Subsequent to the order of distribution, and in September, 1884, an order of the probate court appears,

which recites that it has been satisfactorily shown to the court that the real estate of the decedent, which included numerous tracts of land in each of nine counties in the territory, is incapable of fair and actual partition or division amongst the heirs at law; therefore, upon the petition of the executrix, and upon the consent of the guardian of the children, an order of sale of the whole of this property at public auction is made. Pursuant to this order appears a return of sale of the tract in question to James R. Hayden, a confirmation of the sale, and an executrix' deed to the purchaser, December 11, 1884. On December 16, 1884, Hayden and wife quitclaimed the tract to Mrs. Webster, the respondent.

The course of proceeding taken in this case, both in the superior court and here, by both parties, seems to ignore all of the recorded acts of the probate court of Jefferson county subsequent to the probate of the will. The complaint alleges that, notwithstanding that the children of Webster were in effect named in the will, and were provided for therein, and that the will was a valid and operative will in all respects upon the whole estate of the decedent, "the said probate court, without formal adjudication, however, did treat the said will as absolutely void, and did proceed to administer the said estate in all respects as if the said decedent had died intestate." The proof upon this point is silent, excepting through the production of the record, and the finding of the superior court is merely that after the proof of the will the probate court did "treat the will as void," and proceeded to administer the estate as though Webster had died intestate. Nothing at all is made of the sale by the executrix to Hayden, or of his conveyance to Mrs. Webster. In short, there are two questions presented here, both of which are based upon the will itself, from which alone it is assumed the title is to flow: (1) Did Webster die intestate as to his children? (2) Has

Mrs. Webster any power of sale under the will, and if she has, does it cover only her life estate, or can she alienate the fee?

It is somewhat embarrassing to feel compelled to go outside of the case presented by counsel, but we are unable to understand, as at present advised, why the order of distribution of the probate court, made nearly ten years ago and not appealed from, should not now stand; and why all courts are not estopped to construe the will upon the first point above stated. That court had full jurisdiction to determine the matter of distribution, both upon questions of law and fact, and it is not shown that anything was wanting to its exercise of its power at the time of its action. Both the subject matter and the persons were before it, and it rendered its judgment, not informally, as the complaint here alleges, but with as much formality as is displayed in any part of the voluminous proceedings in this record. The exact phrase used, viz., that Webster died "intestate," was not quite correct, inasmuch as the statute limited the intestacy, if any, to the children, and the will for all other purposes remained. But Mrs. Webster was duly appointed executrix, not administratrix, and, as required by the will, she served without bond, showing that the will was not lost sight of. From this order of distribution an appeal lay to the district and supreme court of the territory, and the supreme court of the United States; but the record does not show this adjudication to have ever been reversed. On the contrary the very next proceeding is an application upon the part of Mrs. Webster, in her capacity of executrix, for a sale of the real estate, because it could not be fairly partitioned; showing that she was accepting and availing herself of the judgment of the probate court. Unless, therefore, there be some other undisclosed feature of the case, we think the court below was in error in ruling

that Mrs. Webster took anything but the estate allowed her by the will in one-third of the realty.

Concerning the sale made by the probate court we shall express no opinion. It was apparently not presented to the court below, as it has not been here. If it was a valid sale, then, of course, the judgment of the superior court was right although the reasons were not, and the appellant must take the title; if, on the other hand, the sale was tainted by illegality, the right to have performance of the contract may fail. In the present condition of the case we do not feel justified in making any disposition of it upon the basis of the executrix' deed.

Reversed, and complaint dismissed.

By this termination of the case we do not intend to preclude any right the respondent may have to tender a deed based upon her deed from Hayden.

DUNBAR, C. J., and SCOTT and ANDERS, JJ., concur.

HOYT, J., disqualified.

## ON RE-HEARING.

The opinion on the re-hearing was delivered February 20, 1894, by

STILES, J.—Owing to the peculiar disposition made of this case at the May, 1893, session of the court, a petition for re-hearing was granted, as matter of course, and argument has been heard upon the question suggested by the former decision, viz., the finality of the judgment of the probate court of Jefferson county decreeing distribution of the estate of Henry A. Webster. The respondent submits that this decree was not a binding adjudication because the court which rendered it did not have jurisdiction of the subject matter of it, and was also without jurisdiction to render a decree that the will was void, or that the decedent died intestate. In order that there may be no mis-

take, we quote the three propositions made in the brief, in full, viz.:

"1st. Assuming for the moment that the provisions of the probate practice act of the territory, in force during the administration of the Webster estate, were within the legislative powers of the territorial legislature, and that the legislature intended thereby to vest in said court jurisdiction to construe wills of decedents and render decrees of distribution involving the construction of wills, which decrees should have the binding force of prior adjudications upon questions of disputed titles subsequently raised, nevertheless said probate court could have no jurisdiction to decide that a person who left a will did in fact die inestate, and could have still less jurisdiction to distribute under the laws of descent the estate of one who himself by his will had otherwise distributed his own estate, as was attempted in this case; or, to state the proposition in other words, the court being one of special and limited jurisdiction deriving all its powers from statutes and being required to proceed within certain limits marked out by the statute, and it appearing on the face of its proceedings that in distributing the estate of one who died testate, as though he had died intestate and otherwise, or to other persons than directed by the will, it has exceeded the authority given it by the statute, its decree is absolutely void and should be treated as a nullity.

"2d. Assuming that the provisions of the said probate practice act did not in any respect conflict with the organic act, nevertheless the legislature did not intend by said act to vest in said court jurisdiction to construe a will or to render a decree distributing real property devised by will, where the decree involved the determination of doubtful provisions of a will, or the construction of a will at all, certainly not that a decree so rendered should be of force as a binding adjudication of property rights between persons *in esse.*

"3d. If the said legislature so intended, the provisions of said act, so far as calculated to effectuate such intention, were and are in conflict with the organic act, and therefore void."

Reduced to simple terms, these propositions are: (1) The probate court had no power to construe a will; (2) the decree entered involved the construction of a will; (3) therefore, the decree was void. Certainly no more important matter has come up for our determination, since we cannot but be aware that the probate courts of the territory for well-nigh forty years proceeded as they were apparently directed by the statute, and made many decrees such as that here in controversy.

The organic act (10 U. S. St. at Large, p. 172) created the territorial probate courts, and provided that their jurisdiction should be "as limited by law." This phrase "as limited by law" was construed, in *Ferris v. Higley*, 20 Wall. 375, to mean that the territorial probate courts should have such jurisdiction as the history of English and American jurisprudence shows to have been conferred upon courts organized for the establishment of wills and the administration of the estates of decedents, with such functions as have been added by statute concerning the guardianship of infants, allottment of dower, and others related more or less to the same general subject. The legislature of Utah had attempted to make the probate courts of that territory courts of general jurisdiction, coördinate in their powers with the district courts, and counsel argued that, as the authority conferred upon the legislature extended to all rightful subjects of legislation, the definition of the jurisdiction of the probate courts was within that authority, and that the law meant by the phrase "as limited by law" was the acts of the territorial legislature, in the absence of congressional enactment. These positions were denied, and the law was held void; but in deciding the case the court said:

"We are not prepared to say that, in deciding what law is meant in this phrase, 'as limited by law,' we are wholly to exclude laws made by the legislature of the ter-

ritory.   There may be cases where that legislature, conferring new rights, or new remedies, or establishing anomalous rules of proceedings within their legislative power, may direct in what court they shall be held.   Nor are we called on to deny that the functions and powers of the probate courts may be more specifically defined by territorial statutes, within the limit of the general idea of the nature of probate courts, or that certain duties not strictly of that character may be imposed on them by that legislation.''

*Locknane v. Martin*, 1 Kan. 494; *Moore v. Koubly*, 1 Idaho, 55; *McCray v. Baker*, 3 Wy. 192, are to the same effect, each holding that the territorial legislature was incompetent to confer upon the probate courts general jurisdiction in law and equity.   *Moore v. Koubly* construed a statute of Washington Territory, and the decision was cited with approval in *Ferris v. Higley.*

*Chadwick v. Chadwick*, 6 Mont. 566, held that a territorial probate court could not entertain a proceeding, even upon stipulation, where the gist of the relief asked was the construction of a will, because the construction of wills is a branch of equity jurisprudence, a proposition not to be in the least questioned.   No statute is referred to in the Montana case, as support for the jurisdiction there exercised by the probate court; nor do counsel in this case contend that there has been any attempt to confer upon the probate courts of Washington Territory anything in the way of general chancery powers, including this matter of construing wills.   But it does appear that when this will was probated, our statute expressly authorized the court to do what it did in distributing portions of the estate to the minor children, and unless the authority conferred and exercised contravened the law of congress, its action was lawful.

Congress left the entire matter of declaring who might make wills, who inherit, and what should constitute a will,

to the territorial legislature. Neither did it assume to interfere with the method of administering estates, or with their custody during administration, or with the means and manner of distribution. The legislature enacted a code of laws governing these subjects, and entrusted the administration of them to the probate courts, which it might lawfully do, unless in some given particular the jurisdiction thus conferred transgressed the limitation fixed by congress. In this probate code there is no attempt to confer general equity powers, but there is some delegation of equity power in connection with the subject matter of the law; for instance, probate courts were authorized to partition real estate in aid of final distribution, ch. 108, Code of 1881; and partition, in the absence of statutory provisions, is a distinct branch of equity, and yet it is quite commonly, in this country, within the jurisdiction of probate courts. 17 Am. & Eng. Ency. of Law, p. 712; Woerner's Law of Adm'n, § 567.

Under provisions of the constitution and the statutes of Oregon, which were very materially different from ours, the supreme court of that state, in *Hunner v. Silver*, 2 Or. 337, held that upon the discharge of the administrator the real estate went directly to the heirs at law without any order or decree therefor, and that therefore the probate court had no power to make partition. The difference remarked as existing between the law of Oregon and that of Washington consists in the provision of our code (1881), § 1444, which is that the administrator or executor shall take possession of and hold the estate, both real and personal "until the estate shall be settled or delivered over, *by order of the probate court*, to the heirs or devisees," and in the elaborate rules governing partition, contained in ch. 108. Concerning the distribution, the provisions of two sections in this chapter are as precise as language could make them, viz.:

"§ 1581. Upon the settlement of the account of the executor or administrator or at any subsequent time, upon the application of the executor or administrator, or any heir, devisee or legatee, the court [meaning the probate court] shall proceed to distribute the residue of the estate among the persons *who are by law entitled.*

"§ 1582. In the decree the court shall *name the person* and the portion or part to which each shall be entitled; and such persons shall have the right to demand and recover their respective shares from the executor or administrator, or any person having the same in possession."

Subsequent sections provide for partition by the same court when the respective shares are not separated and distinguished, upon request.

As affecting the personal estate these sections of our statute declare nothing more than the common law of courts of probate, with few exceptions, for their sole ultimate purpose is distribution, and unless they are clothed with some authority to determine the persons by law entitled to shares in the estate, that purpose would be defeated.

Respondent insists that, in the case of a will, the probate court could do but two things, viz., establish the will, and distribute the estate to the persons designated in it as devisees, leaving the claims of third persons to be asserted by proper action in the courts of general jurisdiction. But the statute will not admit of that construction for the purposes of this case. Sec. 1325 directs the probate court, in cases where children are not provided for, to assign to them such proportion of the estate as they would have been entitled to had there been no will, and closes with these words: "And all the other heirs, devisees and legatees shall refund their proportional part." But the legislature was not content with this direction in general terms, and added § 1336, as follows:

"When any devisees, legatees or heirs shall be required

to refund any part of the estate received by them, for the purpose of making up the share, devise or legacy of any other devisee, legatee or heir, the *probate court*, upon the petition of the person entitled to contribution or distribution of such estate, *may order the same to be made, and enforce such order.*"

Now, although it is nowhere stated, in terms, that the probate court should have power to construe a will, these portions of the statute compel the conclusion that in so far as construction may have been necessary to accomplish the ends provided for, the jurisdiction to construe was conferred. The petition for probate of the will, filed by the respondent, made it appear to the probate court, at the commencement of the proceedings, that the survivors of the deceased were herself and two minor children. Proof of the will in its entirety followed, and in due time, after settlement of the executrix' final account, she petitioned for the distribution of the residue of the estate to the persons entitled. A hearing was had upon the petition, after notice, and the court made the usual findings of fact, and further found that respondent was the wife of the deceased and that the two minors were his children, that the children were born after the execution of the will, and that by reason of their not being mentioned in the will their father died intestate. The conclusion of law found was, "that said Mary E. Webster, widow of deceased, in accordance with the law, is entitled to one-third of the separate real property, and the one-half of the community property real and personal, . . . and that the said descendants (Hetty Amelia Webster and Betsy Bartlett Webster), minors of deceased, are entitled to the residue in equal portions." Decree at length accordingly.

The course taken was in strict accordance with the statute, except the conclusion that the deceased died intestate was not quite true, inasmuch as the intestacy was limited

to the children, and the distribution was to the widow and children as though there were no will; whereas, the will remained in force as to all that portion of the estate not distributed to the children. But the effect was the same so far as the proportions allotted to the wife and children were concerned.

Under this state of facts the only question which can occur to disturb this decree of distribution is that as to whether, in conferring such a power upon the probate courts, conceding it to be a power to construe a will and therefore equitable in its nature, the legislature overstepped the bounds implied in the organic act by the words "as provided by law." The case of *Ferris v. Higley*, above cited, throws no positive light upon this question, as it is addressed solely to the matter of the general jurisdiction in law and equity sought to be conferred upon probate courts in Utah. But it is implied, we think, that the federal supreme court would probably not have held a statute of a territory void which contained the provisions of our statute, for it said:

"Nor are we called on to deny that the functions and powers of the probate courts may be more specifically defined by territorial statutes within the limit of the general idea of the nature of probate courts, or that certain duties not strictly of that character may be imposed on them by that legislation."

Courts of probate, in this country, usually depend upon statutes for their jurisdiction and procedure, and a number of cases are cited to our attention where the power here in discussion has been denied, because not found in the statute law.

In *Hanscom v. Marston*, 82 Me. 288 (19 Atl. Rep. 460), it was held that the probate courts of Maine had no jurisdiction to adjudicate the distribution of a residuary estate. "The executor," it was said, "like other officers, must learn

the law, and unlike many other officers, he can obtain from
the equity court an authoritative construction of the will.''
But it was also said that ''such power is given to probate
courts in some other states;'' and a reference to Woerner's
Law of Administration, chap. 61, shows how general this
jurisdiction is.    Sec. 567 treats of probate partitions of
real estate in equally general terms.    The ''as limited by
law'' of congress must have contemplated such laws of
distribution as were commonly in force, and laws similar
to our own existed long before 1853.

In *Shelby's Ex'rs v. Shelby*, 6 Dana (Ky.), 60, in 1838,
it was held that, in case of children unprovided for, the
circuit court, which was the court of probate, ought to have
distributed their proper shares to such children, it appear-
ing from the record that they were entitled under the stat-
ute.

In *Levins v. Stevens*, 7 Mo. 90, in 1840, it was assumed
as matter of course that the county court wherein was
vested the probate jurisdiction would have been the ''ap-
propriate and peculiar tribunal for the settlement of con-
troversies of this kind'' (pretermitted children); but the
statute had directed otherwise.

Numerous cases, of which *Cox v. Cox*, 101 Mo. 168, is a
fair example, have been cited to us, in which it had been
held that where the mere question of admitting a will to
probate is concerned, the due execution of it is the only
matter to be inquired into, and that the legality of the pro-
visions contained in the instrument is in no wise at issue.
But there is no dispute before us on that point, and none
is likely to occur.

Counsel have urged upon us the view that, since the pro-
bate court found that Webster died intestate, and distrib-
uted the residue of the estate in the same proportions as
though there had been no will, therefore the title of the
widow would have to be considered as derived from the

order of distribution alone.   But the order did not assume to declare the interest or estate which the widow would have in the property distributed to her, and in not doing so the court avoided any attempt at construction which would have been beyond its jurisdiction.   The will undoubtedly governs her estate in such of the property as she derived through it, viz., that which belonged to the separate estate of her husband; but, as to the community property, she has no more than the law gave her, for her husband could dispose of only one-half of that by will, and that half has been given to the children.   The will did not assume to dispose of anything but what the statute permitted the husband to devise.

We are, therefore, constrained to hold as before, that the statutes of the territory required the probate court to do just what was done in this case, so far as it made distribution to the children; that its decree was final and binding unless appealed from, it not being contrary to the limitations of the organic act; that the respondent did not have the title which she had contracted to convey, and that the disposition of the case should be as before ordered.

DUNBAR, C. J., and ANDERS and SCOTT, JJ., concur.

HOYT, J., not sitting.