[No. 6998.  Decided December 10, 1907.]

JERRY MEEKER et al., *Respondents*, v. AGNES WINYER et al.,
*Appellants*.[1]

JUDGMENT—RES JUDICATA—COURTS.  A judgment of the superior
court in a probate proceeding is conclusive upon the parties thereto,
where the same matters are subsequently sought to be raised in a
civil action.

INDIANS—LANDS—ALLOTMENT—PATENT—PRESUMPTION.  Where the
law provides that an Indian allotment may be assigned, upon a pat-
ent to one Indian of land allotted to another, it will be presumed
that the allotment was duly assigned.

SAME—TRIBAL RELATIONS—EVIDENCE.  The fact that an Indian
had belonged to another tribe, does not disprove that his relations
therewith had been severed and that he had become a member of
another tribe and entitled to hold land as such.

SAME—PATENT IN TRUST—FRAUD—EVIDENCE.  A patent to an
Indian, the son-in-law of the original allottee, will not be set aside as
a fraud upon, or held to be in trust for, the original allottee, where
it appears that she knew of the issuance of the patent to her son-in-
law, had lived on the land with her family without making any
claim thereto, and no claim was made by her heirs having knowl-
edge of the patent until nearly twenty years after its issuance, more
than a decade after the death of the patentee, and several years
after the death of the original allottee.

Appeal from a judgment of the superior court for Pierce
county, Gilliam, J., entered April 4, 1907, upon findings in
favor of the plaintiffs, after a trial on the merits before the
court without a jury, in an action for partition.  Affirmed.

*Jas. J. Anderson* and *H. P. Burdick*, for appellants.

*F. Campbell*, for respondents.

DUNBAR, J.—This is an action brought by the plaintiffs
for the partition of 39.70 acres of land, being part of what
was formerly the Puyallup Indian reservation, Pierce county,
Washington.  This land, the testimony showed, was occupied

[1]Reported in 92 Pac. 883.

in the early days by a Puyallup Indian named Quoquilton and Elizabeth Do-do-lit-za, his wife. These people were the maternal grandparents of the defendants in this action, John A. Milcane and Charles Winyer. Before the allotment of lands in the Puyallup reservation was made to the Indians, under the treaty of 1854, Quoquilton died, and the testimony showed that Elizabeth Do-do-lit-za continued to reside on the land, her daughter Mary living with her. Mary was the mother of the defendants John A. Milcane and Charles Winyer. Mary married a man named Milcane, and the defendant John A. Milcane is the issue of said marriage. Milcane afterwards died, and in the year 1877 Mary married John Winyer, and several children were born to Mary and John as the issue of said marriage, among whom was Charles Winyer, the defendant in this action. A patent was issued to the land in question to John Winyer, on January 30, 1886. Winyer died May 24, 1890, and Mary married one John Seattle, who lived on the land with her some two or three years, when Mary died, leaving her mother, her husband, and her two sons, the defendant John A. Milcane and Charles Winyer. John Seattle then went away from the land and has not since resided on it. Elizabeth continued to reside on the land until her death, which occurred in 1903. There was no administration upon the estate of John Winyer until May, 1903, thirteen years after the death of Winyer, when the estate was probated and a distribution made among divers and sundry heirs not necessary to mention here, the defendants in this action being among said heirs receiving distribution. The defendants not being satisfied with the distribution, and refusing to cooperate with the others, this action was brought for partition. The court found the issues in favor of the respondents, the plaintiffs in the action below, and from the judgment entered the defendants have appealed.

The record of the former action in the probate court was introduced over appellants' objection, and it is claimed by the

respondents that such record shows that the appellants are estopped from urging their claims in this action. We think this contention must be sustained; for while it is true that the appellants in this action are setting up a right to the interest in the property from another source than that of John Winyer whose estate was administered upon, the record shows that both the appellants appeared in that action, challenged the jurisdiction of the court, and tendered the same issues that they have tendered in defense of the present action; and while some of the earlier cases of this court may have maintained the distinction between proceedings in the probate court and other more formal actions or proceedings, these distinctions have been obliterated by subsequent adjudications of this court. The case squarely in point and decisive of this case is *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107. There the contention was made that matters pertaining to probate should be referred to what was called "probate procedure," as distinguished from what was denominated "civil" or "criminal procedure." The court, in passing upon that question, said:

"It is assigned as error that the court overruled appellant's demurrer to the petition for citation. This assignment is based upon the theory that the petition showed upon its face that the title and right of possession to certain property were involved, and that the court sitting in a probate proceeding could not hear it. If the demurrer had been interposed to the petition before the issuance of the citation, the question would then have been presented whether, under the facts stated, relief by way of citation could be had; but, in any event, we think the court might have proceeded to settle issues under the petition for trial. In this state we have no probate court, properly speaking, as distinguished from the court that entertains jurisdiction of other matters. The court of general jurisdiction also hears and determines probate matters. Matters pertaining to probate are referred to what is called 'probate procedure,' as distinguished from what is denominated 'civil' or 'criminal procedure.' But when the court, sitting in a probate proceeding, discovers in a petition the statement of facts which forms the basis of a controversy, we see no reason why

it may not settle the issues thereunder when an appearance has been made thereto, and then proceed to try it in a proper manner, as any other civil cause."

In this case the basis of the controversy was formed by the contentions of the appellants in the probate case. The issues there made were considered and determined by the court, and such determination and judgment of the court was adverse to the appellants' contention. Such judgment was not appealed from, the time for such appeal has long since expired, and the judgment of the court is therfore binding upon the parties to the proceeding.

But outside of the question of estoppel, this case should be affirmed on the merits. It is true that the record shows that an allotment had been made to the grandmother of these appellants, Elizabeth Do-do-lit-za, many years before the patent had been issued to John Winyer. The law provides, however, that such allotments may be transferred or assigned to the government or to any member of the tribe, and when the government afterwards patented this land to John Winyer and his family, it must be presumed that the assignments had been made and that the officers of the government did their duty. There is some contention that John Winyer was not a member of the Puyallup tribe. But Mr. Eells, who was agent of the Puyallup reservation at the time of the residence of Winyer thereon, testified that he was acquainted with him and that he was regarded as a member of the tribe. The fact that he had previously belonged to another tribe in no way disproves the fact that, at the time the patent issued, he had severed his tribal relations with the Nisquallies and become a member of the Puyallup tribe. It is probable from all the facts related that he did so.

It is contended by the appellants that, while they concede that the patent was issued to Winyer, Winyer took the title to the land in trust for Elizabeth Do-do-lit-za, and that it was issued to Winyer by the officer of the government through

mistake. But the language of the patent shows that the government was familiar with the circumstances of the case at the time it was issued. It shows that there had been deposited in the general land office of the United States an order bearing date January 20, 1886, from the secretary of the interior, accompanied by a certificate dated October 30, 1884, from the office of Indian affairs, with a list approved October 23, 1884, by the president of the United States, showing the names of members of the Puyallup band of Indians who had made selection of land in accordance with the provisions of the treaties controlling such selection, "in which list," says the patent, "the following tract of land has been designated as the selection of John Winyer;" and his domestic relations are particularly described as follows: "The head of a family consisting of himself and Mary, Johnny, Tommy, Jane and baby," describing the lot in controversy and then proceeding to convey the land to him by patent in a formal manner.

There is no proof whatever that there was any fraud or deception practiced upon Elizabeth Do-do-lit-za, and while it is true the evidence showed that she lived on this land, she lived there with her daughter and her family, making no claim whatever to the land, although she knew, according to the testimony of the appellant Milcane, that the land had been patented to her son-in-law. Milcane himself knew it, and had communicated the fact to the witness Williams during the lifetime of Winyer, and no claim was made affecting the legality of the patent for nearly twenty years after the same had been issued, for more than half a decade after the death of Winyer, and for several years after the death of Elizabeth Do-do-lit-za through whom these appellants claim title. A muniment of title of the dignity and force of a patent of the United States government should not be set aside upon such testimony as appears in this cause.

The judgment of the lower court is affirmed.

HADLEY, C. J., CROW, RUDKIN, FULLERTON, MOUNT, and ROOT, JJ., concur.