[No. 8285.   Department Two.   February 15, 1910.]

*In the Matter of the Estate of* MONS J. OSTLUND, *Deceased.*
SWAN P. PALMQUIST, *as Administrator etc., Appellant,* v.
S. E. SAGSTAD, *Respondent.*[1]

EXECUTORS AND ADMINISTRATORS—DISTRIBUTION—ORDER—EFFECT—WILLS—DESCENT AND DISTRIBUTION.   Upon the probate of a will in favor of a husband, which was void as to the testator's children because they were not named or provided for in the will, a decree of final distribution awarding all the property to the husband, upon published notice as required by statute, is conclusive and binding upon the children, if unquestioned and unappealed from, notwithstanding Rem. & Bal. Code, § 1366, providing that upon the death of a person seized of lands, the title thereto shall vest immediately in his heirs or devisees.

[1]Reported in 106 Pac. 1116.

Same—Notice of Application for Distribution. Under Rem. & Bal. Code, §§ 1499, 1500, and 1589, personal notice to the heirs is not necessary to confer jurisdiction upon the court to enter a final order of distribution which is binding and conclusive on them, although erroneous.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 10, 1909, upon findings in favor of the defendant, in probate, determining the validity of an executor's sale. Reversed.

*L. H. Wheeler*, for appellant.

*J. P. Wall*, for respondent.

Parker, J.—The appellant seeks to enforce payment of the balance of the purchase price due from the respondent upon a sale of real property made in pursuance of an order of sale entered by the superior court. The issues involved were presented to the court in a somewhat informal manner, in the probate proceeding. The controversy was, however, submitted by both parties upon the merits. The disposition of the matter by the trial court was based upon findings of fact and conclusions of law, which disclose the issues involved and decided. The facts as found, so far as necessary for us to notice, are in substance as follows: Prior to May 6, 1903, Mons J. Ostlund and Elsie Ostlund were husband and wife, residing in King county, and were the owners of lots 4 and 5, block 32, in Gilman Park, King county, as their community property. On May 6, 1903, Elsie Ostlund died, leaving a will by which she devised all of her property to her husband. She left surviving her several children, all of whom were then over twenty years old, and none of whom were named or provided for in the will. On March 9, 1905, the will was duly admitted to probate in the superior court for King county, and Mons J. Ostlund was appointed and qualified as executor thereof. On June 5, 1906, upon the executor's filing his account and petition for distribution, and upon due notice by publication, as the law requires, a decree of final settlement and distribu-

tion was duly made and entered in the matter of the estate of Elsie Ostlund, whereby it was,

"Ordered, adjudged and decreed that the account be approved and settled, and that all of the property of said estate above described be and the same is hereby distributed to said Mons J. Ostlund as his sole and separate property, and that the said estate be and hereby is closed and settled;" the lots here involved being described in the decree.

On August 24, 1907, Mons J. Ostlund died in King county, leaving a will, and thereupon Swan P. Palmquist was, by the superior court for King county, duly appointed and qualified as administrator of the will annexed of the estate of Mons J. Ostlund. On January 25, 1909, an order was duly made and entered by the superior court, directing the administrator to sell at private sale, for the purpose of paying the debts of the deceased and the expenses of administration, these lots, assuming they were a part of the estate of Mons J. Ostlund. Thereafter the administrator offered the lots for sale by giving due notice thereof, when the respondent in writing duly bid therefor at said administrator's sale the sum of $2,350, and paid as earnest money thereon the sum of $235. This was the highest and best bid, and was accepted by the administrator subject to confirmation ·by the court. Thereafter on March 11, 1909, the court made an order confirming the sale and directing the administrator to execute and deliver to the respondent a deed for the property upon payment of the balance of the purchase price. Thereafter the administrator tendered to respondent a deed for the lots and demanded payment of the balance of the purchase price which was refused. In addition to these facts the court found the following:

"That the said administrator of the said estate of Mons J. Ostlund, deceased, at the time of receiving the bid of said S. E. Sagstad for said lots, promised to furnish said S. E. Sagstad an abstract showing fee simple title to said property and that upon confirmation of said sale said administrator

would convey to the said S. E. Sagstad ,an absolute fee simple title to all of said lots, clear of encumbrances.

"That an abstract was not furnished until after the confirmation of said sale and that said abstract disclosed that the only interest or title which the said deceased Mons J. Ostlund, had or could have in and to the undivided half owned by his wife, Elsie Ostlund, deceased, was under and by virtue of decree of distribution under the will of said Elsie Ostlund, deceased, and that the children of said Elsie Ostlund were never cited or served with process or given any notice of decree of distribution made under said will save and except the notices required by the statute in cases of publication."

From these facts the court concluded, "that the said estate of Mons J. Ostlund does not own more than one-half of said lots, that the administrator of said estate is unable to convey said lots according to his contract to the said S. E. Sagstad and that S. E. Sagstad is entitled to have returned to him his deposit on said sale, to wit: the sum of two hundred thirty-five ($235) dollars;" and rendered judgment as follows:

"Now, therefore, it is ordered, adjudged and decreed that said S. E. Sagstad be not required to pay the balance of said purchase price and that the said administrator of said estate be and hereby is ordered and directed to pay to the said S. E. Sagstad the sum of two hundred thirty-five ($235) dollars out of any moneys now in his hands or under his control and that the said S. E. Sagstad be and hereby is given judgment against Swan P. Palmquist, administrator of the estate of Mons J. Ostlund, deceased, for the sum of two hundred thirty-five ($235) dollars;"

from which the administrator has appealed.

It is plain that the learned trial court rested its decision upon the assumption; (1) that by reasons of the representations made to the respondent by the administrator at the time of receiving the bid, the respondent was not required to consummate the purchase if the title of the deceased to the lots should appear defective upon the furnishing of the abstract; and (2) that such title did prove defective, because it rests upon the decree of distribution in the estate of Elsie Ostlund, the deceased wife of Mons J. Ostlund; that such de-

cree is not conclusive against the children of Elsie Ostlund, deceased; that her will was void as to them; and hence her husband Mons J. Ostlund became the owner of only a one-half interest in the lots. These are apparently the only questions presented to or decided by the learned trial court, and are the only questions affecting the merits discussed by the respective counsel in their briefs and arguments upon this appeal.

As against respondent's contention that he has a right to the return of the earnest money because of the alleged defective title, the doctrine of caveat emptor is invoked by appellant. It becomes unnecessary, however, for us to express any opinion upon this contention, in view of our conclusion upon the question of the title of Mons J. Ostlund, deceased, under the decree of distribution rendered in the matter of his deceased wife's estate. It is not contended that there was any irregularities or want of published statutory notice as a basis of the jurisdiction of the court in rendering that decree; but it is contended by counsel for respondent, and so held by the learned trial court, in effect, that since Elsie Ostlund did not name or provide for her children in her will it was void as to them, and that they took by inheritance a one-half interest in these lots while her husband took only the other half; and that the decree was not final as to them.

In support of the contention as to the will being void, we are cited to Rem. & Bal. Code, § 1326; *Bower v. Bower*, 5 Wash. 225, 31 Pac. 598; *Morrison v. Morrison*, 25 Wash. 466, 65 Pac. 779; and *Van Brocklin v. Wood*, 38 Wash. 384, 80 Pac. 530. The law announced by these authorities is well settled in this state, as contended for by counsel for respondent, but they are applicable only to the question which was before the superior court in the matter of the estate of Elsie Ostlund upon the hearing of the matter of distribution therein, when the decree was rendered distributing all the property of that estate to Mons J. Ostlund. It is not contended that that decree has ever been reversed or modified, and of course it is

apparent that the time for appeal therefrom has long since past; neither is its effect sought to be avoided upon the ground of fraud. The contention that the court, in rendering the decree, erroneously determined who was entitled to the property as distributee upon distribution of the estate of Elsie Ostlund, goes only to the merits of the question then before the court, and is wholly foreign to the question of the jurisdiction of the court to determine who was entitled to the property then being distributed.

Counsel for respondent calls our attention to § 1366 of Rem. & Bal. Code, which provides:

"When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws;"

and, also, the case of *Griffin v. Warburton*, 23 Wash. 231, 62 Pac. 765, where it was held, under this section, that a formal decree of distribution was not necessary to vest title in the heirs or devisees of the deceased, and wherein the court said: "As such a decree however neither creates their title nor their right of possession to the property a distribution made without it cannot be invalid." This language was used in discussing the validity of a voluntary distribution of the property by the heirs among themselves. The argument of learned counsel seems to be that, since the decree of distribution does not create the title in the distributees, therefore, it can have no effect as an adjudication, if perchance, the court should therein erroneously determine who the distributees are. It is true the decree does not create the title in the distributees, but it is a solemn adjudication of who acquired the title of the deceased, and if rendered upon due process of law is final and conclusive upon that question. Its very object and purpose is to judicially determine who takes the property left by the deceased. The only question here to determine is, was that decree a final determination of the

rights of Mons J. Ostlund in and to these lots, binding upon all persons making claim thereto as heirs of Elsie Ostlund.

The suggestion arises upon the findings above quoted that the want of personal notice given to the children of Elsie Ostlund rendered the decree of distribution of no binding force as against them. Counsel for respondent does not seem to rest his contention upon this point, but upon the alleged invalidity of the will and the statute vesting title in the heirs immediately upon the death of the ancestor. However a sufficient answer to any contention which might be made upon the want of personal notice is the fact that our statute does not require any such notice, but gives the court jurisdiction of the matter of distribution upon the publication of an order to show cause "directing all persons interested to appear . . ." Rem. & Bal. Code, §§ 1499, 1500, 1589.

The supreme court of California in discussing the force and effect of a decree of distribution made upon a published notice only, under a procedure similar to ours, in the case of *Cunha v. Hughes*, 122 Cal. 111, 112, 54 Pac. 535, 68 Am. St. 27, said:

"Upon an application for the distribution of an estate, the entire world is notified to be present at the hearing, and to make known their claims, if any they have, to the estate of the decedent or any portion thereof, and the decree of distribution becomes a judicial determination of their claim, which, unless reversed, set aside, or modified upon appeal, is conclusive of their rights, the same as is a final judgment in any other action or proceeding. By giving the notice in the manner prescribed by the statute, the court acquires jurisdiction over all persons entitled to assert any claim to the estate, and, whether they appear and present their claim for adjudication, or fail to appear and suffer default, the judgment is conclusive upon them. The decree of distribution becomes the measure of the rights of all claimants to the estate, and their rights are to be determined by the terms of this decree."

In the case of *Chadbourne v. Hartz*, 93 Minn. 233, 101 N. W. 68, it is said: "A decree by a probate court having

jurisdiction, assigning the residue of the estate of a deceased person, is conclusive upon all persons interested in such estate. Such decree is in the nature of a judgment in rem, which binds all the world." 1 Freeman, Judgments, p. 581; 18 Cyc. 663; 2 Woerner's American Law of Administration, 561.

Judge Woerner says: "When the statutory provisions are complied with, the distribution is said to partake of the nature of a proceeding in rem, and is conclusive upon all persons having any interest in the estate." We are of the opinion that the title of Mons J. Ostlund to these lots at the time of his death was not defective because resting upon this decree of distribution. The decree was a final adjudication by a court of competent jurisdiction, upon due process of law, as to his right and title thereto. The following decisions of this court, though not involving the exact question here presented, lend support to and are in harmony with this view. *Ryan v. Fergusson*, 3 Wash. 356, 28 Pac. 910; *Webster v. Seattle Trust Co.*, 7 Wash. 642, 33 Pac. 970, 35 Pac. 1082; *Prefontaine v. McMicken*, 16 Wash. 16, 47 Pac. 231; *Reformed Presbyterian Church v. McMillan*, 31 Wash. 643, 72 Pac. 502; *Meeker v. Winyer*, 48 Wash. 27, 92 Pac. 883.

We conclude that the superior court was in error in rendering the judgment it did against the administrator, and declining to render judgment against the respondent. The judgment is therefore reversed, with directions to enter judgment against the respondent.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.