[No. 26428.   Department One.   May 24, 1937.]

*In the Matter of the Estate of* OLIVE DAUB, *Deceased.*

WILLIAM H. PEMBERTON, *as Supervisor of the State Inheritance Tax and Escheat Division, Appellant,* v. EDWARD J. BRAGG *et al., Respondents.*[1]

[1]Reported in 68 P. (2d) 610.

*William H. Pemberton* and *Charles Snyder,* for appellant.

*Philip D. Macbride* and *George W. Williams,* for respondents.

GERAGHTY, J.—Olive Daub, a resident of Seattle, died testate October 13, 1930, leaving an estate consisting wholly of her interest in the community property of herself and her surviving husband, Albert Daub. Her will was admitted to probate and letters testamentary were issued to the husband, named in the will as executor.

Paragraph two of her will is as follows:

"I hereby give, bequeath and devise unto my husband, ALBERT DAUB, all of my interest in the community property with the power to sell and convert the same and to use, for his own purposes, all of the income and net profits thereof during his life and while he shall remain unmarried, together with such part of the principal sum as he shall determine to be necessary and proper, provided that any expenditures by him of the principal sum of all of said community property shall be deemed to be made one-half from his share and one-half from my share, to the end that at the time of his death one-half of the principal sum of the estate which he may then leave, shall be deemed to be the remainder of such principal hereby bequeathed to him."

The will further provides that, upon the death of her husband, such portion of her share of the community property "as shall be remaining in his hands"

shall go, after the payment of certain specified bequests, to Edward Clarence Bragg, her brother, and Edward Johnson Bragg, a nephew, share and share alike. Provision is made that, in case either of the Braggs died prior to the death of her husband, the whole remainder should go to the survivor.

The estate was probated in due course and final decree of distribution entered July 2, 1931. The decree contained the following provision, giving rise to the present controversy:

"Said Albert Daub is hereby further ordered and directed to pay the state of Washington from the funds of said estate, the inheritance tax due the state of Washington from said estate, and since the will of said deceased bequeathes and devises to Albert Daub, surviving husband of said deceased, more than a life interest in the estate of said deceased, said inheritance tax now due the state of Washington shall be figured and determined at the same rate as if said estate and the whole thereof were willed and distributed to said Albert Daub, husband of said deceased; and upon the death of said Albert Daub, the remainder of said estate that shall not have been used or consumed by said Albert Daub during his life, shall be taxed at such rate of inheritance tax as the laws of the state of Washington shall then provide, without any deduction on account of inheritance tax now paid by said estate to the state of Washington."

The interest of Olive Daub in the community estate, after allowable deductions, had been appraised at $257,498.48. On this valuation, the executor, pursuant to the terms of the above quoted provision of the decree of distribution, paid to the state $7,374.92, being the amount that would have been payable had the wife's will vested in him the absolute title to the whole of her estate. If the procedure provided in Rem. Rev. Stat., § 11205 [P. C. § 7056], for determining the value of life estates and estates in remainder had been

followed in computing the tax due from the estate, the total tax would be $8,864.99, or $1,490.07 more than the sum paid. This difference arises from the higher rates chargeable to the interests passing to the brother and nephew.

Upon the death of Albert Daub, leaving his wife's estate undiminished, a question arose as to the amount of tax payable by the remaindermen, Edward Clarence Bragg and Edward Johnson Bragg, on account of the estate passing to them under the will of Olive Daub. By stipulation with the inheritance tax and escheat division, the remaindermen paid the tax claimed by the division to be due in accordance with the provision of the decree of distribution, with an agreement that they would be refunded any amount adjudicated to be in excess of their actual liability.

After a hearing on the petition of the remaindermen, filed under Rem. Rev. Stat., § 11216 [P. C. § 7067], for a determination of the amount of tax due in the Olive Daub estate, the court reached the conclusion that the quoted provision of the decree of distribution was beyond the jurisdiction of the superior court; that the amount of tax payable from the estate of Olive Daub, as of the date of her death, was $8,864.99; that $7,374.92 had been paid, leaving a deficiency of $1,490.07, which, with interest, made an aggregate deficiency of $2,096.03, against which the estate was entitled to a credit for the payment of $1,825.00 by legatees other than those here involved; thus leaving a net balance due the state of Washington of $271.03.

A decree was accordingly entered adjudging this latter sum to be the amount due the state, and directing repayment by the state to the remaindermen of all in excess of this sum paid by them under the stipulation. The supervisor of the inheritance tax and escheat division appeals from the decree.

The supervisor's appeal is principally grounded upon the contention that the provision in the decree of distribution providing for the payment of an inheritance tax *in futuro* is binding upon the parties as *res judicata*. While the appeal turns upon this point, as incidental to it there is involved to some extent the character of the estate vested in Albert Daub, as well as the question whether the remainders passing to the Braggs were vested or contingent.

The parties are in substantial agreement that Albert Daub took a life estate, and that the remainders passing to the Braggs were vested rather than contingent. But the supervisor urges that the legal questions involved were sufficiently uncertain at the time of distribution to warrant an adjustment in the way of compromise under Rem. Rev. Stat., § 11215 [P. C. § 7066], providing:

"Whenever an estate charged, or sought to be charged with the inheritance tax, is of such a nature, or is so disposed, that the liability of the estate is doubtful, or the value thereof cannot, with reasonable certainty, be ascertained under the provisions of law, the state board of tax commissioners may compromise with the beneficiaries or representatives of such estates, and compound the tax thereon; but said settlement must be approved by the superior court having jurisdiction of the estate, and after such approval, the payment of the amount of the taxes so agreed upon shall discharge the lien against the property of the estate."

The record does not support the suggestion that the quoted provision in the decree was made by way of compromise under this section. The only circumstance justifying an inference that the adjustment was made by way of compromise is the acquiescence of the inheritance tax and escheat division in the decree. But, in any event, the decree finds no support in this

section. The section contemplates the present payment of the tax agreed on by way of compromise and furnishes no authority either to the inheritance tax and escheat division or to the court to assume the function of establishing an extra-statutory rule effective in the future.

■ The supervisor is not aided by Rem. Rev. Stat., § 11206 [P. C. § 7057], cited by him in support of the decree. The first paragraph of the section is as follows:

"When property is transferred in trust or otherwise and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, such property shall be appraised at its clear market value immediately upon the transfer or as soon thereafter as practicable and a tax shall be imposed upon such transfer at the highest rate which on the happening of any of said contingencies or conditions *would be probable* under the provisions of this act and such tax so imposed shall be due *and payable in the same manner as other taxes:* Provided, That *if such tax, so determined, appears to be excessive, the matter may be submitted to the court for determination and adjustment:* . . ." (Italics ours.)

This clearly requires a present determination and payment of the tax, with provision for refund under ˙certain contingencies.

■ The supervisor places special reliance upon the last paragraph of the section, reading:

"Estates in expectancy which are contingent or defeasible and in which proceedings for determination of the tax have not been taken or where the taxation thereof has been held in abeyance shall be appraised at their full undiminished clear value when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof without diminution for or on account of any valuation theretofore made

of the particular estates for purposes of taxation upon which said estates in expectancy may have been limited. . . ."

This provision does not aid him, because the taxation of the remainders was not, in fact, held in abeyance.

Section 11205, Rem. Rev. Stat. [P. C. § 7056], provides that, whenever the estate of a deceased person be subject to an inheritance tax and there shall be a life estate given to one person and the remainder to another or others, the entire estate shall be appraised as other estates are required to be appraised by the laws of the state. The value of the life estate

" . . . shall be determined according to the rules or standards of mortality and of value commonly used in actuaries' combined experience tables on the basis of four per cent annual interest, and the value of the remainder shall be determined by deducting the amount found to be the value of the . . . life . . . estate from the whole estate. After the values shall have been determined as provided in this section, the tax shall be computed and collected in the same manner that the tax on other estates is computed and collected: . . ."

At the time of his wife's death, the age of Albert Daub was slightly over sixty-four years and seven months. His life expectancy, fixed by the actuaries' combined experience tables, was slightly less than eleven years, and the value of his life interest $80,705.39. The first ten thousand dollars of this sum was exempt; the next fifty thousand was taxable at the rate of one per cent, and the balance at the rate of two per cent, making in all a tax of $914.11 due on account of his life estate. But the sum of $7,374.92 was actually paid, the remainders vesting in the Braggs being depleted by the amount of the difference between the two sums. If the estate had only paid

the amount of the tax chargeable to the life estate and the tax on the remainders had been left in abeyance, there would be some basis for the supervisor's contention. But what he is seeking here is in effect the exaction of a double tax from the remaindermen.

■ This brings us to a consideration of the binding force of the decree of distribution. The decree was entered in a proceeding *in rem* and, proper notice having been given, was binding upon the entire world in respect of every question properly before the court for determination. *In re Ostlund's Estate*, 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990. No personal notice was given to the remaindermen of the hearing on the final account; but, the published notice having been given, no personal notice was required. We do not understand that any question is made as to the regularity of the published notice. Section 1533, Rem. Rev. Stat. [P. C. § 9795], prescribes the order to be made by the court on the hearing of the final report and petition for distribution. The court

". . . shall, if it approves such report, and finds the estate ready to be closed, cause to be entered a decree approving such report, find and adjudge the persons entitled to the remainder of the estate, and that all debts have been paid, and by such decree shall distribute the real and personal property to those entitled to the same."

Further provision is made for partition under certain conditions.

Other than §§ 11215 and 11216, already referred to, there is nowhere in the probate code or in the inheritance tax law any provision warranting the court in finding the amount of tax payable at any other than the existing statutory rates. While the remaindermen were bound by the decree of distribution in so far as it related to their distributive shares of the estate,

they were not bound by the provision made for payment of a tax on their remainders at a rate effective at some future date.

We are of the opinion that the decree of the trial court was correct; it is accordingly affirmed.

STEINERT, C. J., BLAKE, MAIN, and ROBINSON, JJ., concur.