[No. 3521. Decided January 3, 1901.]

LEMIRA CROSS *et al., Appellants,* v. SOLOMON CROSS *et al.,*
*Respondents.*

WILLS—CONSTRUCTION—UNCERTAINTY OF INTENT.

Where a testator, in attempting to devise all his estate, makes
specific bequests to his wife, if living, and to certain grandchil-
dren, if living, "and, if not living, to their heirs, if any living,
and, if none living, it shall fall to the following named heirs
[his children]," whom he appointed to choose their own execu-
tor, the will is void for uncertainty, aside from the specific be-
quests, as it cannot be gathered therefrom to what persons the
testator intended his estate to be devised.

Appeal from Superior Court, Columbia County.—Hon.
THOMAS H. BRENTS, Judge. Reversed.

*Will H. Fouts, Edmiston & Miller* and *S. J. Chadwick,*
for appellants.

*Sturdevant & Brown,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—This suit involves the construction of the
following will:

"I M. Cross, sr. of Dayton Co of Columbia
                            Washington Territory
piling up a farmers Earnings.
Make this my last will.
I give devise bequeath my estate and
property Real and Personal as follows
                       that is to say after my debts and
Funeral expenses is all paid
I bequeath to my wife if living
first one thousand, 1000, Dollars.
and to Malvina Miller Louisa Donalson
and Lively Fuller all the Daughters of

43—23 WASH

Zepaniah Deceased three 300 hundred
Dollars each if living and if not living
to their heirs if any living
                                            and if none living
it shall fall to the following named
heirs of the said M. Cross, sr. if living
and if not living their propotionable part
to be divided equally among their Lawful
heirs, to witt.
                    W. N. Cross, Lucinda Crall.
Solomon Cross, James H. Cross.
Mary E. Vallen, and M. Cross, Jr.
I also appoint the above named heirs
to choose their own Executor
in witness whereof I have signed and
sealed and Published and declared this
                    Last will
instrument as my ^ at Dayton Columbia
County Washington Territory.
Signed and Sealed.  M. Cross sr (eal)
this the 27th day of Dec. 1887
this said will dated at Dayton
Columbia Co Washington Territory
on this the 27 day of December 1887 signed
and sealed this instrument and published
and declared the same as and for his last
will and we at his request and in his
presence and in the presence of each other
hereunto written our names as
subscribing witnesses.
        "D. C. Guernsey.
        "F. W. Guernsey."

The superior court construed the testator's intention to
devise to the wife, Lemira Cross, $1,000, and to Lively
Fuller, Melvina Miller, and Louisa Donolson the sum of
$300 each, and all the rest, residue, and remainder of the
estate to Solomon Cross, W. N. Cross, James H. Cross, M.
Cross, Jr., Lucinda Crall, and Mary E. Vallen, share and

share alike, and made the order of distribution in accordance with such construction. The persons mentioned in the will were all living at the death of the deceased. The deceased and Lemira Cross were married in 1884. The will was executed in 1887. There was no issue of the marriage, but each had children by former marriages, all of whom were of age, and living separate and apart from their parents. The testator died in September, 1896. The will is entirely in his handwriting, and the estate left is of the value of $40,000. The "Zepaniah deceased" mentioned in the will was the son of the testator, and the three daughters of "Zepaniah" are the granddaughters of the testator. Some testimony was heard by the court, which tended to show that deceased was careful and prudent in his business transactions, and that the relations existing between deceased and his family and that of his wife were friendly. The opinion of the learned judge of the superior court is included in the record, and it may be conceded that some of the authorities mentioned go to the extent of supporting the conclusion of the court, or rather supporting the proposition that the court must find the testator's intent to devise his estate differently from the distribution made by the statute of descents; and counsel for respondents have cited many cases illustrating the application of the accepted canons for the interpretation of wills. There is no substantial controversy in the authorized rules for the interpretation of wills. Our statute (§ 4614, Ballinger's Code) declares:

"All courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters brought before them."

It is true that, in the interpretation of the will, words, phrases, or sentences may be transposed, and may be added

to or taken from the will, when it becomes necessary in order to find the true intent and meaning of the testator, and to carry that intent and meaning into effect. It is also true that the presumption exists that the testator devises his whole estate when he makes his will; and we think the language of the will under consideration indicates that the testator had in mind the disposition of his entire estate. The case of *Murphy v. Carlin,* 113 Mo. 112 (20 S. W. 786, 35 Am. St. Rep. 699) cited by respondents, states the principle very well:

"The true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of wills by putting themselves, so far as may be, in the place of the testator, and reading all his directions therein contained in the light of his environment at the time it was made."

There are also other principles which are present at the construction of a will. As said in *Wilkins v. Allen,* 18 How. 385:

"The rule of law gives the estate to the heir, unless the will takes it from him; and, in order to take it from him, it must give it to some other person."

It is urged by counsel for the respondents that the pronoun "it" in the seventeenth line of the will should have for its antecedent "estate"; that the disposition of $1,000 to the wife and $300 each to the granddaughters, being specific bequests to the heirs mentioned, allows the inference that the other six children of the deceased mentioned should take the residue of the estate; that the pronoun should be taken apart from its grammatical significance, because the testator's language indicates that he was illiterate, and had not an accurate knowledge of the use of words and the construction of sentences. It is conceded that the antecedent of the pronoun "it" in its logical con-

nection would be the $900 devised to the three granddaughters, but, if the antecedent of the pronoun, according to the conjecture of counsel, is the estate, then a fair conjecture might be that a contingency was in the contemplation of the testator; that is, if the wife and granddaughters nor their heirs were living at the death of the testator, the whole estate would go to the six children mentioned in the last clause. But such provision would take care of only the $1,000 devised to the wife and the $900 to the three . grandchildren; for the residue of the estate on the demise of the persons mentioned would, under the law, pass to the six children. But, in the contingency that some of them were living at the time of his death, there is nothing said of any portion of the estate other than the $1,900 which was carved out. It was said in *Wright v. Hicks,* 12 Ga. 155 (56 Am. Dec. 451):

"In the absence of anything in the will to the contrary, the presumption is that the ancestor intended that his property should go where the law carries it, which is supposed to be the channel of natural descent. To interrupt or disturb this descent, or direct it in a different course, should require plain words to that effect."

Mr. Jarman, in his work on Wills (6th ed., p. 498), says:

"The heir is not to be disinherited unless by express words or by necessary implication, and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed."

The testator seems to have followed one thought in his devise. That was to bequeath to his wife and the three grandchildren. The $1,900 is carved out, and specifically disposed of, even to the contemplation of the residuary legatees. No mention or intimation of any other portion of the estate is specified. We fully realize the duty of the

court to diligently inquire into the words of the will, and the environment of the testator, if those words are not clear, to determine his intention; and that such intention, when ascertained, must be given effect. But the court ought not to make a will; and while the inference, as stated, is that the testator intended to devise his whole estate, it is equally necessary that the persons to whom it is devised should be indicated. We cannot, from this will, gather such intention. It would be mere conjecture. It would be the direction of the court, rather than that of the testator. It may be well to consider that in this state non-intervention wills are not infrequently executed, and powers given to executors, so that the administration may not be within the probate court. The natural and ordinary distribution of the estate is according to the statute of descents, and the presumption that the execution of a will meant that the testator intended to devise his estate to other than the heir probably had greater force in ancient times, when the inequality of the larger inheritance of the heir was recognized. Here the testator seems to have distinctly devised $1,000 to his wife and $300 each to his granddaughters, and either to have been satisfied with the lawful distribution of the residue, or to have omitted any further reference to it. At any rate, there is no intelligible designation of the objects of further bounty, and, as has been observed, the court cannot enter into the field of conjecture, and itself determine who should take the estate. The cause is reversed, with direction to the superior court to distribute the estate as follows: $1,000 to the wife, $300 each to the granddaughters, and the residue of the estate to the heirs according to the law of descents.

DUNBAR, C. J., and ANDERS and FULLERTON, JJ., concur.