[No. 4526.   Decided April 27, 1903.]

REFORMED PRESBYTERIAN CHURCH OF NORTH AMERICA, *Appellant*, v. CHRISTOPHER McMILLAN, *Executor, Respondent.*

WILLS — CONSTRUCTION — JURISDICTION OF SUPERIOR COURT SITTING IN PROBATE.

A superior court sitting in probate has jurisdiction to entertain a proceeding to construe a will, as such courts are not shorn of their general powers conferred by the constitution by the further provision vesting them with jurisdiction "of all matters of probate," so as to restrict their jurisdiction to that of probate courts when acting as such.

SAME — DETERMINATION OF DISTRIBUTEES.

*Semble*, that under Bal. Code, § 6355, which makes it the duty of the superior court sitting in probate, upon the settlement of the final account, to distribute the estate among the persons who are by law entitled thereto, the court may determine who are entitled to the property.

SAME — ACTION BY DEVISEE — LIMITATIONS.

One claiming to be named in a will as a devisee has a right to maintain an action to establish such claim at any time before final distribution, regardless of the statute of limitations.

SAME — DEPOSITIONS — POWER OF COURT TO ISSUE COMMISSIONS.

The superior court has power to issue a commission to take depositions of witnesses in a proceeding in probate pending before it, either under the provisions of Bal. Code, § 6017 (Pierce's Code, § 979), authorizing testimony to be taken by deposition to be read in evidence in actions or proceedings pending in any court, or under Pierce's Code, § 2333, which expressly authorizes a probate court to issue a commission to take the depositions of witnesses.

SAME — DESIGNATION OF DEVISEE — DEFECTIVE DESCRIPTION.

The intent of a testator to make a devise to the "Reformed Presbyterian Church of North America, General Synod", although the will recited the devise as in favor of the "Board of Directors of the Society for Disabled Ministers of the Reformed Presbyterian Church of Illinois", is evident from the fact that there was

no such body in existence as the devisee named; that the testator was a member of the Reformed Presbyterian Church of North America, whose governing body was the General Synod; that he had belonged to a congregation thereof in Illinois prior to his removal to the state of Washington and all his life had taken great interest in that organization; that on the occasion of his last visit to his old home and church in Illinois the General Synod had recently established a fund for the relief of disabled ministers, which it had put in charge of a "Committee on Disabled Ministers' Fund"; that collections were being taken in the churches at that time for the purpose; and that the subject was a matter of interested discussion among his relatives whom he was then visiting, a former minister of the congregation to which the testator had belonged being one of the beneficiaries of such fund.

SAME — PAROL EVIDENCE.

Parol evidence is admissible for the purpose of removing the latent ambiguity occasioned by the defective designation of the devisee, where there are words of designation, but a mistake in the name.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM O. CHAPMAN, Judge.    Reversed.

*Frank A. Luse* (*Nathan R. Park,* of counsel), for appellant.

*Frederick H. Murray,* for respondent.

The opinion of the court was delivered by

FULLERTON, C. J.—Archibald McMillan died in Pierce county, state of Washington, on the 15th day of May, 1893, leaving a will, in which he made, among others, the following bequests:

"I devise and bequeath in trust for the use of my dear wife, for and during the period of her natural life, all my right, title and interest, as long as she may remain unmarried, to all my personal estate, whether in my name, possession or otherwise, to be held by my hereinafter named executors or their successor in trust for her, to be

invested by them as to them may seem best, and the proceeds rents and profits to be given her for her disposal as she may desire; and I devise and bequeath in trust for my dear wife for and during the period of her natural life, all my right, title and interest, as long as she remains unmarried, to all my real estate of whatever name and description, to be held by my hereinafter named executors or their successors in trust for her during her natural life and the proceeds, rents and profits thereof to be given her for her disposal as she may desire.

"And upon her death, or marriage, I direct that the personal estate, goods and chattels shall be distributed or divided in the following manner, that is to say.

"SECOND—I hereby devise and bequeath in trust to the Board of Directors of the Society for Disabled Ministers of the Reformed Presbyterian Church of Illinois the sum of two thousand five hundred (2,500) dollars to be paid by my executors hereinafter named or their successors out of my personal estate and to be vested by said board perpetually, as to them may seem best, the proceeds, rents and profits thereof to be expended for the comfortable maintenance of the disabled ministers in the care of said society, and in case that the said proceeds, rents and profits cease to be so applied, then the said principal sum of two thousand five hundred (2,500) dollars to immediately revert or be paid to the issue of my body or their heirs."

The will was admitted to probate on the 29th day of May, 1893. The executor named in the will duly qualified, and entered upon the duties of his trust, and was acting thereunder on the 20th day of November, 1893, when the wife of the testator died. Thereafter the executor sought for the legatee above named, but was unable to find any association of persons or corporation in the state of Illinois which bore the name designated, and thereupon proceeded to wind up the estate, assuming that the bequest was void because of a misdescription of the person or body intended as trustee. On the 10th day of January, 1902,

the day set for hearing the petition for final distribution of the estate, the appellant, The Reformed Presbyterian Church of North America, General Synod, appeared and filed a claim for the bequest, averring that the bequest was intended for it. An answer was filed to the application raising issues of fact on which a hearing was had, at the conclusion of which the court found that the appellant was not the trustee named in the will, and that the bequest was not intended for it; that the trustee named had no existence in fact; and consequently, that the bequest reverted to the heirs at law of the decedent, and directed that it be distributed accordingly. This appeal is from that decree.

Before passing to the contention of the appellant, it is proper to notice some of the reasons urged by the respondent for an affirmance of the judgment appealed from, regardless of the merits of the controversy or the grounds upon which the trial court rested its decision. The first contention is that the proceeding was one to construe a will, and that a superior court sitting in probate is without jurisdiction to entertain a proceeding for that purpose. By statute (§ 6355, Bal. Code) it is made the duty of the court sitting in probate upon the settlement of the final account to distribute the estate among the persons who are by law entitled thereto. This statute, we think, confers upon the court jurisdiction to determine who are entitled to the property, as the power to distribute includes the power to determine to whom distribution should be made. But, if this were not so, the court has inherent power to determine the question, and this in a probate proceeding on the application of one claiming to be an heir or legatee. The Constitution does not make the superior courts probate courts. On the contrary it vests the superior courts

with jurisdiction "of all matters of probate"; hence the court is not shorn of its general powers simply because the cause before it may be one which was cognizable formerly in a court of probate. It possesses in every case and at all times its powers as a court of superior and general jurisdiction, and among these is the power to hear and determine the question to whom a bequest made by a decedent rightfully belongs. A statute, therefore, can neither add to nor take away the power, and it is immaterial to inquire whether or not one conferring such a power is in existence.

It is next contended that the appellant's claim, as it was not made until more than six years after the death of McMillan, was barred by the statute of limitations. If we understand the argument upon this point, counsel do not contend that the executor holds adversely to the legatees *named* in the will, or that the statute of limitations would run against them while the estate was in the hands of the executor in the course of administration, no matter how long continued, but that it does run against any one *not so named;* and that in the case before us the appellant cannot be considered as one named in the will, as it requires extrinsic evidence to enable the court to recognize it. It would seem, however, that no such distinction could exist as the one here sought to be made. If the appellant is not named or described in the will, then clearly it has no right to the legacy at all, and no amount of extrinsic evidence can create a right for it. On the other hand, if it is named or described in the will, no matter how defective its designation may be, it stands on a footing with all other devisees, and any circumstance which will prevent the statute from running as to them, will prevent the statute from running as to it. An executor of an estate holding as such does not,

of course, hold adversely to the heirs or devisees thereof; hence no mere delay in closing up the estate, no matter how long continued, can operate to vest title in him to the exclusion of such heirs or devisees.

For the purpose of showing its right to the bequest, the appellant introduced the depositions of several witnesses taken upon commissions issued out of the superior court in this proceeding; and it was contended in the court below and is contended here that the court was without authority to issue such commissions, and that the evidence taken thereon was not properly before the court. The Code (Pierce's, § 979) provides that "the testimony of a witness may be taken by deposition, to be read in evidence in an action, suit or proceeding commenced and pending in any court in this state," when certain conditions exist, of which no question is made here. This is authority ample to authorize a superior court to issue a commission to take the depositions of a witness in a proceeding in probate pending before it, even if it be necessary to find statutory authority for the issuance of such a commission. In addition to this, there is a statute which expressly authorizes a probate court to issue a commission to take the deposition of witnesses, and, if it were true that the superior court, when hearing matters of probate, has only the powers of the former territorial probate courts, that statute would authorize the issuance of a commission to take depositions. Code 1881, § 1316; Pierce's Washington Code, § 2333.

The evidence discloses that the Reformed Presbyterian Church of North America, General Synod, is a religious denomination, having a presbyterian plan of church government. The highest governing authority is the General Synod, which meets yearly at stated places selected in ad-

vance.   The General Synod is composed of delegates from
the various presbyteries, which in turn are composed of
all the ministers of a specified district, together with one
ruling elder from each congregation within the district.
The ruling elders are elected by the congregations, usually
for life or during membership in the congregation.   The
church has a well recognized form of worship.   It main-
tains church buildings and other meeting places.   It main-
tains such a body of ministers as the needs of the church
require, and its ability permits.   At a meeting of the
General Synod in 1886 it established a fund for the relief
and maintenance of superannuated and disabled ministers,
putting it in charge of a committee called the committee on
Disabled Ministers' Fund.   This committee was first ap-
pointed at the General Synod in 1886, and has been regu-
larly reappointed every year since.  ·It reports to the
General Synod, and takes care of and relieves such of the
ministers of the church as the General Synod directs.   The
chief source from which the committee obtains funds is
collections taken up in the various congregations of the
church, though money is often obtained by specific gifts
from the charitably inclined, and at least one bequest has
been made and paid into the fund since its establishment.

The decedent, prior to the time he came to the Pacific
Coast, was an active member of the Reformed Presbyte-
rian Church, General Synod, belonging to a congregation
located near Sparta, Illinois, in which his father was a rul-
ing elder, and with which he had been actively identified
since his early youth.   Whether he ever formally segre-
gated his membership from this congregation does not ap-
pear.   It does appear, however, that he never subsequently
lived where there was another congregation having his
own particular faith, and that he never formally joined

any other denomination.  It was shown also that he visited his old home twice after he removed therefrom—once in 1876, and again in 1887 or 1888.  At each of these visits, so his aged sister-in-law and his nephew testify, he expressed great interest in the old church, and was anxious concerning its welfare; the first witness saying: "He was raised in the church as was also his father; . . . he loved the church and was anxious that it should prosper."  At the time of his second visit the church had just established its Disabled Ministers' Fund.  Collections were then being taken for the support of certain disabled ministers, one of whom was formerly minister of the congregation to which the decedent had belonged, and the matter was then being agitated among his relatives with whom he was then visiting, and who were members of the church.

In the light of these circumstances, it seems to us that the bequest should go to the claimant.  Even if the trustee named had no existence in fact, it would not alone be a sufficient reason for allowing the bequest to lapse.  A bequest is never allowed to lapse for the want of a trustee, and if it be in fact the disabled ministers of the appellant church who were intended by the decedent to be the recipient of his bounty, the court can appoint a trustee, and charge it with the duty of administering the trust.  But we cannot think there is any doubt who was intended to be named as trustee, or who were intended as the beneficiaries of the trust.  Manifestly, the former was the committee having in charge the Disabled Ministers' Fund of the appellant church, and the latter the disabled ministers of that church.  The words of the bequest, when interpreted by the surrounding circumstances and the situation in which the testator stood towards the objects of his charity, admit of no other

conclusion.  The church he named was the church in which he was reared; it was the church of his father.  Connected with it were not only his earliest, hence fondest, recollections, but in his faith in its teachings lay his hope of another and better life.  Certainly to it, and to no other, would his memory turn when he sought to dispose of his worldly goods by an instrument which could take effect only after his death.  That he did not remember accurately the name of the particular body which had in charge the fund is not strange.  Among his own church people the names used to designate it would doubtless be rather descriptive than technical, and if he ever knew its exact title, he could scarcely be expected to remember it for the length of time intervening between his last visit and the date of the will.  But this is not very material.  He knew such a body existed, and the language of the bequest used to designate the trustee is rather a description than a name, and, treating it as such, it sufficiently describes the body of the appellant church having in charge the fund for its disabled ministers.

That parol evidence is admissible to explain a latent ambiguity in a will as well as in other writings is abundantly sustained by the authorities.  As was said by the court in *Newell's Appeal,* 24 Pa. St. 197.

".   .   .   it has always been held that a defective designation of the devisee or legatee intended may be repaired by parol proof.  If the person to take be not in some sort described in the devise, evidence will not be admitted to show who was intended, for that would be to make a will by parol; but where there are words of designation, though a mistake of the name, the ambiguity may be removed by evidence *dehors* the will.  This is a well settled rule in respect to devises in general, and it is peculiarly applicable to charitable bequests made to religious corporations."

See also, *Taylor v. Horst*, 23 Wash. 446 (63 Pac. 231);
*Cross v. Cross*, 23 Wash. 673 (63 Pac. 528); *Woman's
Foreign Miss. Society v. Mitchell*, 93 Md. 199 (48 Atl.
737, 53 L. R. A. 711);*Hinckley v. Thatcher*, 139 Mass.
477 (1 N. E. 840, 52 Am. Rep. 719); *Reilly v. Union
Protestant Infirmary*, 87 Md. 664 (40 Atl. 894).

The judgment is reversed, and the cause remanded,
with instructions to enter an order directing the bequest
to be paid to the appellant.

MOUNT, DUNBAR and ANDERS, JJ., concur.