[No. 14658.    Department Two.    April 10, 1918.]

THE STATE OF WASHINGTON, *on the Relation of Mary I. Martin, as next friend of Judge R. Andrews, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *John S. Jurey, Judge, Respondent.*[1]

MANDAMUS — TO COURTS—ERRONEOUS DISMISSAL FOR WANT OF JURISDICTION—REMEDY BY APPEAL. Mandamus lies to compel a superior court to proceed with a case which it erroneously dismissed on the mistaken belief that it had no jurisdiction; since the judgment rests upon a disclaimer of the judicial function, and is not a judicial act which ought to be reviewed on appeal (MOUNT and PARKER, JJ., dissenting).

INSANE PERSONS — INQUISITIONS — DISCHARGE — JURISDICTION OF COURTS. The superior court having general jurisdiction over insane persons, has inherent jurisdiction irrespective of statute to discharge or commit an insane person, and such power is not affected by the repeal of Rem. Code, § 1671, authorizing the discharge of an insane person upon recovering his reason.

SAME—DISCHARGE—PROCEEDINGS. Where an insane person is out on parole given by a judge of the superior court that committed him to the hospital, the courts have jurisdiction to discharge him without the necessity of first applying to the superintendent of the hospital and there claiming his exemption from restraint.

Application for a writ of mandamus, filed in the supreme court January 28, 1918. Granted.

*Davis & Neal,* for relator.

*James B. Kinne,* for respondent.

CHADWICK, J.—This is an application for a writ of mandate to compel the respondent superior judge to take jurisdiction of, and hear, the petition of the relator, who appears as the next friend of Judge R. An-

[1]Reported in 172 Pac. 257.

drews, who is under the parole of a superior judge of King county as an insane person. Relator filed his petition in the original proceeding, setting up the present sanity of Andrews, and asking the court to so declare by order or judgment.

The wife of Andrews, who had theretofore been appointed as his guardian, appeared by counsel and demurred to the petition. The matter coming on regularly to be heard, the court entertained a plea to the jurisdiction of the court to hear the petition, and held that the superior court was without jurisdiction to hear and determine. At the request of counsel, a judgment of dismissal was withheld until application could be made to this court for a writ of mandate.

Although counsel waives all question as to the propriety of granting the writ, we have not been able to overcome the objection, *sua sponte,* of at least one member of the department that the writ should not issue for the reason that relator has an adequate remedy by appeal. It is said that the writ cannot issue without overruling certain decisions of this court.

It seems to the writer and his associates who join in this opinion that a writ may issue. But for the objection, we had thought that the right of a court to direct an inferior court to assume jurisdiction in a proper case, where jurisdiction had been denied, and to hear and determine, had never been questioned. Jurisdiction is the power to hear and determine. It is the power by which courts take cognizance of and decide cases.

"Jurisdiction is of two sorts—jurisdiction over the subject-matter, and jurisdiction over the party with reference to that subject-matter." 4 Words & Phrases, p. 3884.

"It is settled beyond controversy that where a court acting on an erroneous view of the law declines juris-

diction of a cause, mandamus will lie to compel it to take cognizance thereof." Note, Ann. Cas. 1915D 199.

See, also, 26 Cyc. 190 *et seq.*

It was:

"One of the ancient offices of this writ . . . to compel action by lower judicial tribunals respecting matters properly before them and within their jurisdiction. If such courts decline to exercise their judicature or to decide matters pending before them, mandamus has always been regarded as the appropriate means by which to set in motion their jurisdictional power. It lies to compel the performance of whatever appertains to the duty of lower courts, where there has been for any reason a refusal to act. Its agency in cases of this class is confined to setting in motion the judicial activities so that a decision will be reached, but it does not extend to any direction as to what that decision ought to be." *Crocker v. Justices of Superior Court,* 208 Mass. 162, 94 N. E. 369.

It was so held in *State ex rel. Shannon v. Hunter,* 3 Wash. 92, 27 Pac. 1076, where the court, although admitting a doubt which to us seems fanciful, held on authority that, "the proper remedy where a cause has been erroneously dismissed for want of jurisdiction, is mandamus."

This case was followed in *State ex rel. Maltby v. Superior Court,* 7 Wash. 223, 34 Pac. 922. In this case, the court says the rule rests in the highest authority. Of this there can be no question. It may be questioned whether any authority can be found to the contrary. See, also, *State ex rel. Smith v. Parker,* 12 Wash. 685, 42 Pac. 113; *State ex rel. Smith v. McClinton,* 17 Wash. 45, 48 Pac. 740. Lack of space permits the citation of but few of scores of cases. The rule is recognized by every text writer and may be found in every encyclopedia.

Says Mr. High in his Extraordinary Legal Remedies, at §§ 147, 148:

"The jurisdiction by writ of mandamus over inferior judicial tribunals, although closely guarded and jealously exercised by the courts, is too well established to admit of controversy, and forms one of the most salutary features of the general jurisdiction of the courts by mandamus. It is most frequently invoked for the purpose of setting inferior courts in motion, and to compel them to act when action has been either refused or delayed. The earlier remedy, adopted in England, for the refusal or neglect of justice on the part of the courts, was by writ of *procedendo ad judicium*. This was an original writ, issuing out of chancery, to the judges of any subordinate court, commanding them in the king's name to proceed to judgment, but without specifying any particular judgment. If this writ was disobeyed, or if the judges to whom it was addressed still neglected or refused to act, they were liable to punishment for contempt, or by an attachment returnable either in the king's bench or in the common pleas.

"The use of the writ of *procedendo* for the purpose of quickening the action of inferior courts, and preventing a delay of justice, has in modern times been superseded by the writ of mandamus. And the latter is now regarded as the proper, if not the only remedy, by which the sovereign power may compel the performance of official duty by inferior magistrates and officers of the law."

See, also, Spelling, Injunction and Other Extraordinary Remedies (2d ed.), § 171; Works, Courts and Their Jurisdiction, p. 620; Merrill, Mandamus, §§ 36, 203; Tapping, Mandamus, § 154.

The theory advanced against the weight of authority is, if a court has no jurisdiction, it must be granted that it has jurisdiction to hold that it is without jurisdiction, and this being so, a refusal of a court to take jurisdiction is no more than error, and, like any other error, is to be corrected on appeal.

Of all the text writers, Mr. Bailey in his work on Jurisdiction is the only one who seems to lend sanction to this theory. He says:

"Some courts make the distinction that where the court entertains jurisdiction, then its decision cannot be controlled, but where it refuses to exercise jurisdiction it may be compelled. On first impression it would seem that, where the jurisdiction of the court is invoked by petition or other proceeding, and the court entertains the proceeding to the extent of acting upon it and determining its sufficiency or insufficiency, it has assumed jurisdiction, and, though its determination may have been erroneous, this is but an error of judgment; that it has exercised its judgment and discretion, which is not subject to review by *mandamus,* and that ordinarily such error may be corrected upon appeal or by writ of error. Where, however, such determination cannot be reviewed, then the writ might issue to prevent a failure of justice." 2 Bailey, Jurisdiction, § 594.

This he advances without authority or color of authority. While citation of authority would not make it good law, if it were bad, like many first impressions, it will not stand the test of reason. It will not go on paper, and this we suspect is why it finds no mention in the books.

It is fundamental that a higher court will not control the judicial acts of an inferior court. It will not invade the realm. Its prime function is to review for error. The first consideration, then, must be to determine the character of the act of the inferior court. Is a judgment of dismissal based upon a denial of jurisdiction over a subject-matter a judicial act in the sense that it is a judgment which ought to be reviewed on appeal?

A dismissal under the mistaken belief that the court has no jurisdiction is in no sense a judicial act for it rests upon a disclaimer of the judicial function. The

court has neither heard nor determined. Neither the law nor the facts are affected in the slightest degree, and appeals being for the correction of judicial errors, errors of discretion or of the judicial mind, it follows that one entitled should have resort to some method by which the court can be set in motion. The court has done nothing which is either judicial or discretionary. It has refused to do either. Its judgment is *nullius filius*, a void thing, binding no one, a legal non-entity.

"Where an action is dismissed on the sole ground that the court has no jurisdiction of the subject-matter of the suit . . . this is of course no adjudication of the merits and no bar to another action for the same cause." 2 Black, Judgments (2d ed.), § 713.

In *Cowan v. Fulton*, 23 Gratt. (Va.) 579, the court denied its jurisdiction upon the ground that the act relied on to sustain it was unconstitutional.

It was held that a writ should issue, the court saying:

"But it is insisted that conceding the law referred to, to be constitutional, still the judgment of the circuit court, dismissing the cause for want of jurisdiction, and striking it from the docket, is a final judgment in the cause; and the term at which this supposed judgment was rendered, having passed by, it is not competent to the appellate court, by *mandamus*, to compel in effect a rehearing of the cause.

"If the premises were true, the conclusion might perhaps be conceded; for it certainly is not regular nor proper to use the writ of *mandamus* to review or rehear the judgments of a subordinate court; but the fallacy of the argument consists in the assumption that there was a judgment in the cause; whereas the court positively and unequivocally refused to pass on it at all, either 'to review, reverse or affirm the judgment'; and merely *directed* 'that the cause be dismissed and stricken from the docket.' It was a simple refusal to

hear and decide the case; and this court having held that no appeal lies from such refusal, it is exactly the case to which the highly remedial writ of mandamus is most frequently applied, in order to prevent a defect or failure of justice. . . .

"Original jurisdiction to award writs of mandamus upon these principles of the common law, has been conferred on this court by the constitution and laws of the state; and in accordance therewith, we say to the judge of the circuit court of Pulaski, that he has the constitutional power to hear and finally dispose of the cause referred to, as by an appellate court; and that it is his duty so to do.''

It is the rule in the Federal courts that every party has a right to a judgment of the court; and that the writ will issue in a case where an inferior court has improperly dismissed a cause under a disclaimer of power to entertain jurisdiction of the subject-matter, and the case will be reinstated with instructions to try and determine. *Ex parte Bradstreet,* 7 Pet. (32 U. S.) *634, 647.

It is also held that a refusal of a court to take jurisdiction, it having jurisdiction, is not a final judgment in the sense which authorizes a writ of error, and the remedy is properly by way of mandamus. *Railroad Co. v. Wiswall,* 23 Wall. (90 U. S.) 507.

This decision was afterwards overcome by a statute which gave a right of review by writ of error. A later statute took away both remedies and made the order final. The case nevertheless stands as an authority upon the principle involved. It is a judicial expression as distinguished from the later expressions of the legislative body.

In *People v. Swift,* 59 Mich. 529, 26 N. W. 694, the lower court had quashed certain indictments under the mistaken notion that it had no jurisdiction. It was contended that a writ of error was the proper remedy. Here that appeal is the proper remedy. So that we

have the same case, for the office of the two remedies is the same, to reverse, modify or affirm.

The court said:

"Judgment on a writ of error, in such a case, would merely vacate the order to quash, and while, no doubt, the recorder's court would in such case proceed, yet the real purpose of this application is to speed the trial, and a mandamus seems more fitting than a writ of error where the duty would be inferred rather than expressed."

The dialogue between Lord Ellenborough and counsel, reported in *King v. Justices of Kent,* 14 East 395, is of interest.

"Lord Ellenborough, C. J. . . . If the justices had rejected the application in the exercise of the discretion vested in them by legislature, this court would not interfere; but if they had rejected it on the ground now stated, they had no power to grant it, the court would interfere so far as to set the jurisdiction of the magistrates in motion, by directing them to hear and determine upon the application. The court therefore granted a rule to shew cause, &c.

"*Park, Taddy* and *Berens,* now shewed cause against the rule; and first said that the justices in session had heard the application made by counsel on the part of the journeymen millers; but they also admitted that the counsel who opposed it had insisted that by the construction which had been put upon the act of Elizabeth, the discretion of the magistrates in the assessment of wages was confined to labourers and servants in husbandry; and that the sessions had on that ground rejected the application. Upon which Lord *Ellenborough,* C. J., observed, that it was evident that the magistrates had never exercised their discretion at all upon the question, whether the application was fit to be granted, or not; but appeared to have considered that they had no jurisdiction to hear it; therefore they could not be said to have already *heard* the application. . . .

"We do not, however, by granting this mandamus, at all interfere with the exercise of that discretion

which the legislature meant to confide to the justices of the peace in sessions; we only say that they have a discretion to exercise; and therefore they must hear the application; but, having heard it, it rests entirely with them to act or not upon it as they think fit.''

It is clearly demonstrable that the law is settled by the great weight of authority that a court will supervise a lower court to the extent that it will compel it to take jurisdiction where it has erroneously denied its jurisdiction.

Coming now to our own decisions in *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630, L. R. A. 1917F 905, we endeavored to show that, in most of the cases where a writ had been denied, it was because of the holding that appeal was an adequate remedy. And we think in all of them the jurisdiction of the court over the subject-matter was not questioned. It may be said that the genesis of all the subsequent confusion and conflict, or apparent conflict, in our own decisions is in the case of *State ex rel. Townsend Gas & Elec. L. Co. v. Superior Court,* 20 Wash. 502, 55 Pac. 933. We have had resort to the original briefs, and can say, in addition to what we said of it in the *Martin* case, that the question put by counsel to the court was not whether a court would compel an inferior court to take jurisdiction of a case where jurisdiction had been disclaimed, but whether the court would compel the satisfaction of a judgment through the process of a contempt proceeding pending an appeal upon the merits. The court was exercising an acknowledged jurisdiction; it had passed on the merits. Its judgment, if ill-founded, rested in error, and the writ was properly denied. There is certainly nothing in the decision when read with the record in mind that makes it an authority against our holding.

Upon the authority of that case, this court refused

in two subsequent cases to compel the superior court to take jurisdiction. *State ex rel. Barbo v. Hadley,* 20 Wash. 520, 56 Pac. 29; *State ex rel. McIntyre v. Superior Court,* 21 Wash. 108, 57 Pac. 352.

Next in order is *State ex rel. Romano v. Yakey,* 43 Wash. 15, 85 Pac. 990. Application was made to a justice of the peace for the issuance of a criminal warrant. The justice denied the warrant upon the false assumption that he had no power to issue the warrant, maintaining under the statutes that his act would be an interference with the duties of the prosecuting attorney. Although the writ was denied because directed to a judge by name, and not to the court, this court said:

"Section 6695, Bal. Code (P. C. § 3114), permits any person to make complaint that a criminal offense has been committed, and if the magistrate to whom the complaint is made wrongfully refuses to act in the matter, we think the party applying for the warrant has a sufficient interest in the performance of the public duty to compel action by mandamus. . . .

"Section 6695, *supra,* under which the application for the warrant in this case was made, provides that complaint may be made to a justice of the peace or judge of the superior court. Had this application been made to the superior court of King county we would find no obstacle in the way of running a writ against that court."

The next case, and one which may be cited as an authority against us, is that of *State ex rel. Piper v. Superior Court,* 45 Wash. 196, 87 Pac. 1120. There the judge of the superior court refused to proceed with the trial of a case. A writ of mandamus was refused. But the case does not rest upon, nor does it do violence to the broad principles which we are asserting. The judge refused to proceed because the service had been made by publication when the law made no provision for such manner of service in that kind of a case. The

court acted judicially. It adjudged a fact and construed a law. It determined from the record that the statutes providing for the service of the process of the court had not been complied with. This clearly was a matter resting in error and was reviewable by appeal.

In the case of *State ex rel. Murphy v. Superior Court,* 73 Wash. 507, 131 Pac. 1136, the *Piper* case was relied upon as authority. It was distinguished. This case, in our opinion, does not bear directly one way or the other upon the case we have at bar, for the mandamus was sought to compel the court to proceed with the trial of the case, or to enter a judgment of dismissal. The court had to a certain extent exercised its jurisdiction.

It is agreed by all text writers, and has been affirmed by this court, that a writ of prohibition is the counterpart of the writ of mandate. The one is directed to compel action; the other to prohibit it.

In *State ex rel. Wood v. Superior Court,* 76 Wash. 27, 135 Pac. 494, the superior court was proceeding to hear and determine a will contest which had been begun after the time fixed by our statutes for the contest of a will. In other words, the court had no jurisdiction to hear and determine. Proceeding upon the theory that the question raised by the record rested in the definition of that term as a thing absolute, and not as resting in the determination of some fact, or whether the court had obtained jurisdiction of the person through a proper compliance with the statutes providing for the manner of bringing parties into court, or acquiring jurisdiction of a subject-matter admittedly within the jurisdiction of the court, we said:

"It is contended that there is a plain, speedy and adequate remedy by appeal, and for that reason the writ in any event should not issue. But the law ap-

pears to be that, where the court is proceeding with a case without first having acquired jurisdiction, it presents a proper case for the invocation of the writ of prohibition. *White v. Superior Court,* 126 Cal. 245, 58 Pac. 450; *State ex rel. Alladio v. Superior Court,* 17 Wash. 54, 48 Pac. 733; *State ex rel. Mackintosh v. Superior Court,* 45 Wash. 248, 88 Pac. 207. In the case last cited, speaking of the proper function of the writ, it is said: 'The function of a writ of prohibition is to arrest proceedings which are without, or in excess of, jurisdiction, and not to review errors in matters of procedure where jurisdiction exists.' "

But if, after all, it be said with any assurance that we have held to the contrary of our present position, it can be said with the same assurance that we have as often held the other way.

We have not always differentiated between inherent power to hear and power to proceed. This has resulted in a confusion in our decisions. With this distinction preserved, the law is clear. Where there is a lack of inherent jurisdiction in the court itself, a writ of prohibition will lie to restrain it from further proceedings; or where the court has erroneously decided that such inherent jurisdiction is lacking, mandamus will lie to compel it to entertain the cause and to hear and determine. Where, however, the question is whether the court, acting within the scope of its admitted jurisdiction, has acquired jurisdiction over the parties or the particular subject-matter, the writ will not issue. In such a case, the court is exercising its judicial function in passing on the question, not whether it has inherent jurisdiction, but whether it has acquired jurisdiction or a right to proceed within the limit of an admitted jurisdiction. If, in the exercise of its discretion or judgment, it commits error, the proper remedy is by appeal, and not by writ of prohibition or mandamus. Viewed in this light, the decision in the *Piper* case is entirely consistent, for there

the court did not hold that it lacked jurisdiction inherently, but simply that its jurisdiction had not been properly invoked.

That the court has jurisdiction of the subject-matter of this case and ought to hear the petition of the relator, and enter a judgment upon the issues tendered by the answer of the guardian, we have no doubt. Counsel admits that, prior to the enactment of the probate code of 1917 (Laws 1917, p. 642, ch. 156), the court, acting in probate, had jurisdiction to inquire into the sanity of a person who had been adjudged to be insane. Rem. Code, § 1671, which was repealed by the act of 1917, reads as follows:

"Whenever the court shall receive information that such ward has recovered his reason, he shall immediately inquire into the facts, and if he finds that such ward is of sound mind, he shall forthwith discharge such person from care and custody; and the guardian shall immediately settle his accounts and restore to such person all things remaining in his hands belonging or appertaining to such ward."

The act of 1915, Rem. Code, § 5967, providing for the commitment of insane persons, provides:

"Whenever in the judgment of the superintendent of any hospital for the insane any person in his charge shall have so far recovered as to make it safe for such patient and for the public to allow him to be at large, the superintendent may parole such patient and allow him to leave such hospital, and whenever in the judgment of the superintendent any patient under his charge has become sane, mentally responsible and probably free from danger of relapse or recurrence of mental unsoundness, the superintendent shall discharge such patient from the hospital."

In the same section, it is provided that a judge of the superior court may recommit any person who has been paroled by the superintendent of the hospital.

The superior courts of this state are courts of gen-

eral jurisdiction. They have power to hear and determine all matters, legal and equitable, and all special proceedings known to the common law, except in so far as these powers have been expressly denied. The power of the court to discharge a person committed as insane did not depend upon the statute which has been repealed. The court had inherent jurisdiction independent of statute.

The power of a court to discharge or commit an insane person is an inherent power of a court of equity. It is derived *ex necessitate* from the commonwealth. It rests in the sovereignty just as it rested in the King at common law; and is exercised now by a court of equity just as it was then exercised through the courts of chancery. If the power is bestowed upon another tribunal or person, it does not follow that the court is deprived of its jurisdiction. For the same reason of necessity, it is held that the granted jurisdiction is cumulative and concurrent with that of a court of chancery. *In re Sall,* 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885; 14 R. C. L. 554-556; 22 Cyc. 1120.

That the superior court has such general powers has been held in the following cases: *Moore v. Perrott,* 2 Wash. 1, 25 Pac. 906; *Krieschel v. Board of Com'rs, Snohomish County,* 12 Wash. 428, 41 Pac. 186; *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107; *Reformed Presbyterian Church v. McMillan,* 31 Wash. 643, 72 Pac. 502; *In re Sall, supra; In re Ostlund's Estate,* 57 Wash. 359, 106.Pac. 1116, 135 Am. St. 990; *Sloan v. West,* 63 Wash. 623, 116 Pac. 272; *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492; *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147; *In re Martin's Estate,* 82 Wash. 226, 144 Pac. 42; *Ritchie v. Trumbull,* 89 Wash. 389, 154 Pac. 816.

If this be so, it follows that the repeal of § 1671 did not in any way affect the jurisdiction of the court to

inquire into the sanity of a person who may be committed or paroled.

The power of the court to act independently of the statute is really confessed by counsel, for he grants that the court would have power to hear the issues tendered by the petitioner if he had brought a *habeas corpus* proceeding. If the court, under its general equity powers, has jurisdiction over insane persons, the remedy or procedure is a matter of secondary consideration; for a court of equity has power not only to decree, but to enforce its decrees in its own way, in the absence of a definite procedure. We so held in *In re Sall, supra,* where we upheld the appointment of a guardian for the estate of a nonresident ward in the absence of any statute or procedure.

In the case at bar, Andrews was not confined to the hospital, but was out on a parole granted by one of the judges of the superior court of King county; and although it might be held that, when an insane person is confined and in charge of the superintendent of a hospital, he might be required, in the interest of a more orderly procedure, to claim his exemption from restraint by first applying to the superintendent of the hospital, it should not be held when the petition shows that the patient is not so restrained, but is at large under a parole issued by the committing court.

No other question in the case was considered by respondent. We will not therefore anticipate them pending an appeal after a trial upon the merits.

The writ will issue.

ELLIS, C. J., and HOLCOMB, J., concur.

MOUNT, J. (dissenting)—I cannot agree that this is a case for the issuance of the writ of mandate. Our statute provides, at Rem. Code, § 1014, that the writ,

"may be issued by any court, except a justice's or a police court, to any inferior tribunal, . . . to com-

pel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, . . .;''

and, at § 1015:

''The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law.''

This court, in *State ex rel. Miller v. Superior Court*, 40 Wash. 555, 82 Pac. 875, 111 Am. St. 925, 2 L. R. A. (N. S.) 395, laid down the rule, in accordance with the statute, that these extraordinary writs would not issue in cases where there was a plain, speedy and adequate remedy by appeal. We there said:

''We again announce the rule that the adequacy of the remedy by appeal, or in the ordinary course of law, is the test to be applied by this court in all applications for extraordinary writs, and not the mere question of jurisdiction or lack of jurisdiction; and that the adequacy of the remedy by appeal does not depend upon the mere question of delay or expense. There must be something in the nature of the action or proceeding that makes it apparent to this court that it will not be able to protect the rights of the litigants or afford them adequate redress, otherwise than through the exercise of this extraordinary jurisdiction.

''We desire to say in conclusion that the court is declaring no new rule at this time. The rule now adhered to has been the established one in this court since the decision in *State ex rel. Townsend Gas etc. Co. v. Superior Court, supra,* and ever since the announcement of that decision the court has uniformly treated the cases cited by the relator as overruled. To avoid further misunderstanding, the cases of *State ex rel. Cummings v. Superior Court; State ex rel. Campbell v. Superior Court; State ex rel. Allen v. Superior Court;* and *State ex rel. Stockman v. Superior Court, supra,* and all other decisions of this court which make the question of the jurisdiction of the court below the sole test of jurisdiction in this court, on applications of this kind, are hereby overruled.''

It was stated there, in language as apt as may be readily conceived, that these extraordinary writs will not be issued where there is a plain, speedy or adequate remedy by appeal, and we have steadfastly, since that time, held to that rule, with the possible exception of cases where the court has erred in granting or refusing to grant a change of venue; and in those cases we have held that the remedy by appeal was inadequate, and for that reason alone have issued writs of mandamus and prohibition. It is not claimed in this case, and cannot reasonably be claimed, that the relator here does not have an adequate remedy by appeal. As stated in the majority opinion, Mr. Andrews was adjudged to be insane. His wife was appointed guardian of his person and estate. Afterwards, Mr. Andrews was paroled to the care of his daughter, who filed an application in the lower court, alleging that his reason had returned and praying the court to adjudge him again sane and to order the guardian to turn his property over to him as a sane person. In answer to this petition, Mrs. Andrews filed a demurrer, and upon the hearing of that demurrer, the trial court construed a statute (Rem. Code, § 5967) to mean that the superior court did not have jurisdiction to determine whether the insane person was restored to sanity, and for that reason sustained the demurrer and was about to dismiss the petition.

If we may assume that the trial court erred in the construction of the statute referred to, and because of that error dismissed the application, or was about to do so, it is clear that the relator has as plain, speedy and adequate a remedy by appeal as in any other case. Suppose that the simplest form of action is brought upon a promissory note. Suppose the defendant demurs to the complaint upon the ground that the court

has no jurisdiction over the subject-matter. Suppose the court, in ruling upon the demurrer, construes a statute and sustains the demurrer to the complaint, and is about to dismiss the action. Can it be said that the plaintiff in such action has no plain, speedy or adequate remedy by appeal and therefore may review the error by mandamus? I think not. And yet the relator's remedy here is just as plain, just as speedy, and just as adequate as in the supposed case. In *State ex rel. Langley v. Superior Court,* 74 Wash. 556, 134 Pac. 173, where we referred to a former opinion in that same case, 73 Wash. 110, 131 Pac. 482, holding that certain orders could not be reviewed in advance of final judgment, we said:

"The basis of the majority opinion was that the relators had an adequate remedy by appeal. This, indeed, is the true test in all applications for extraordinary writs. *State ex rel. Korsstrom v. Superior Court,* 48 Wash. 671, 94 Pac. 472; *State ex rel. Carrau v. Superior Court,* 30 Wash. 700, 71 Pac. 648; *State ex rel. Egbert v. Blumberg,* 46 Wash. 270, 89 Pac. 708; *State ex rel. Gabe v. Main,* 66 Wash. 381, 119 Pac. 844; *State ex rel. Townsend Gas & Elec. Light Co. v. Superior Court,* 20 Wash. 502, 55 Pac. 933. The authorities are unanimous to the effect that neither a writ of mandate nor other extraordinary writ can be used to perform the office of an appeal to review the judicial action of an inferior tribunal."

There is no showing in this record, and none was attempted upon the oral argument, that any emergency exists, or that there is any danger of any rights or any property being lost by whatever delay may occur upon an appeal, should one be taken; but the relator comes here insisting that the writ should issue nevertheless. If the writ may issue in this case, then it may issue in all cases where a general demurrer which goes to the jurisdiction, either of the person or of the sub-

ject-matter, is sustained to a complaint. The issuance of the writ in this case again opens the door to appeals by writs of mandamus, and not in the ordinary way. This is what we sought to avoid when we announced the rule in *State ex rel. Miller v. Superior Court, supra.* I agree that the jurisdiction is the power to hear and determine causes. The trial court exercised that power. It decided the case upon a question of law. If that decision was erroneous, it may be reviewed by ordinary appeal. If the decision was right, it disposes of the case. I agree that the office of the writ of mandamus is to compel inferior tribunals to exercise their jurisdiction. The lower tribunal has acted in this case and exercised its jurisdiction. I agree that, prior to *State ex rel. Miller v. Superior Court, supra,* this court had issued writs of mandamus where there was a remedy by appeal. But, as stated in that case, all those decisions were overruled where the question of jurisdiction of the court below was the sole test of jurisdiction in this court, and the quotation from the *Langley* case, *supra,* shows that the rule has been adhered to where there was a remedy by appeal. The general rule in other states may be that errors of this kind may be reviewed by a writ of mandamus, but that is not the rule in this court and we have frequently so held, because the statute of this state controls, and provides that such writs may be issued only where there is not a plain, speedy and adequate remedy by appeal. In the cases referred to in the majority opinion, even in *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630, L. R. A. 1917F 905, which was a change-of-venue case, we concluded that there was no plain, speedy, and adequate remedy by appeal, and for that reason writs were issued. I would readily concede in this case that, if there was no adequate remedy by appeal, then it would be a proper case for the

issuance of the writ. I agree, of course, that the extraordinary writ of prohibition or mandamus may be a speedy and easy way of reviewing errors which occur in the trial court, but until the majority opinion becomes the law and reads out of the statute § 1015, as it undoubtedly does, and overrules *State ex rel. Miller v. Superior Court, supra,* and numerous other cases holding to the same effect, I must withhold my concurrence in that practice.

PARKER, J., concurs with MOUNT, J.